**William SIGNORINI, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (UNITED PARCEL SERVICE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 7, 1995.

Decided Aug. 29, 1995.

Reargument Denied Nov. 11, 1995.

---

Sara J. Klein, for petitioner.

Terry L.M. Bashline, for respondent.

Before PELLEGRINI and NEWMAN, JJ., and KELTON, Senior Judge.

PELLEGRINI, Judge.

William Signorini (Claimant) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) affirming the Referee's dismissal of Claimant's petition for reinstatement of worker's compensation benefits.

While employed by United Parcel Service (Employer) as a tractor-trailer driver, Claimant injured his lower back on December 22, 1988, when he pulled a 1250–pound dolly to prevent it from rolling away from him. Employer issued a notice of compensation payable, granting Claimant benefits. After entering into a supplemental agreement [1] which reflected Claimant's disability, Claimant returned to work for Employer and worked on and off at his previous position of tractor-trailer driver. Finding it impossible to perform the requirements of a tractor-trailer driver, Claimant then worked as a delivery driver from March of 1991 until he resigned on June 27, 1991.[2] Claimant resigned on June 27, 1991, for personal reasons relating to company policy violations in his handling of C.O.D. monies he received from customers, and after his resignation, he filed a petition to reinstate benefits, claiming that his condition worsened to the point where he could no longer perform his pre-injury or post-injury position. The Employer filed an answer denying the allegations of Claimant's reinstatement petition.

The Referee heard the testimony offered by the Claimant that he had injured his back at work in December of 1988 and Claimant's description of his symptoms and treatment. Claimant also testified that his back pain recurred and that two days before his discharge on June 27, 1991, he had complained to his supervisors of this recurring back pain. He stated his belief that he had been wrongly discharged.

The Employer presented the testimony of three of its employees. Eric Bringe, a supervisor, testified that he was aware of Claimant's back injury but that Claimant had not complained of pain associated with it. He testified that Claimant had informed him that some mornings his back was stiff and therefore he was extremely careful in the methods he chose to employ at work, and that he used different methods than he did prior to his injury because he did not want to reinjure his back. Donald Guiddy, a manager, testified that he received no reports from Claimant or any other employee that Claimant was having difficulty performing his job due to his recurrent back pain. He further testified that Claimant resigned rather than be discharged for failure to turn in C.O.D. monies nightly, a dishonest act according to company policy. Finally, Susan Orchowski, a loss prevention supervisor, testified that, as a result of an audit, she became aware that C.O.D. monies collected by Claimant were not being turned in nightly according to company policy. She testified that, after she and other employee-supervisors confronted Claimant about those discrepancies, Claimant resigned.

The only medical testimony at the hearings was offered by Claimant who offered the testimony of his treating chiropractor and physician, as well as the unobjected-to reports prepared by two additional medical witnesses retained by Employer. Dr. Harbosky, Claimant's chiropractor, testified that Claimant suffered from spinal curvature and low back pain due to disc displacement and that his condition was a direct result of the work-related injury. Dr. Harbosky further testified that Claimant could not perform his pre-injury job because he currently suffered from muscle spasms in his back and because

---

1. The supplemental agreement was the last document filed regarding Claimant's compensation benefits, but because Claimant returned to work intermittently and because Employer never filed a petition for termination of benefits, we will treat Claimant's benefits as having been suspended.

2. In his position as a delivery driver for Employer, Claimant delivered and picked up packages weighing between one and seventy pounds.

his many failed attempts to return to work had only resulted in his reinjuring himself. As of Dr. Harbosky's most recent exam performed after Claimant's resignation, he opined that Claimant was capable of performing only sedentary work.

The Claimant also presented the testimony of his treating physician, Dr. Baghai, who testified that Claimant was suffering from a disc protrusion at the L4–L5 level leading to compression of the nerve of the left leg, and that this condition was caused by the work-related injury. He testified further that the Claimant could not return to his prior level of activity at work, but that a patient with his condition could work at a light duty level, lifting no more than 10 to 25 pounds. On cross examination Dr. Baghai then contradicted himself by stating that the Claimant could not return to work in any capacity, even sedentary. In rendering this opinion, Dr. Baghai did not consider Claimant's ability to drive, stand, walk, sit or climb, only his inability to perform lifting.

Claimant also submitted two independent medical reports prepared at the request of the Employer. The Employer made no objection to these reports and they were accepted into evidence by the Referee at the April 8, 1993 hearing. Dr. Carothers, a chiropractor, was retained by Employer to perform an independent examination of the Claimant after his resignation. After this exam he concluded that there was a causal relationship between the Claimant's current complaints and the work-related injury. He opined that the Claimant was able to return to work at a medium capability level, with occasional lifting limited to no more than 50 pounds and frequent lifting of no more than 25 pounds.

Dr. Talbott, a neurologist, performed an independent examination of the Claimant after his resignation, also at the request of the Employer. Dr. Talbott concluded that the Claimant became symptomatic following his work injury and has remained variably symptomatic since that time. He reported that, although Claimant was not able to return to his pre-injury level of employment, he was capable of returning to medium level employment that did not require prolonged periods of sitting or driving, or the lifting of over 50 pounds. He concluded his report with the opinion that Claimant's back and leg pain was due to a combination of multiple events sustained over the course of employment, with the work-related injury being noted as a significant contributing factor to his overall symptom complex.

The Referee determined Claimant's testimony regarding the recurrence of his work-related injury and his reports of such to his supervisors to be incredible. The Referee found that Claimant did not sustain his burden of proving that his injury had worsened or recurred because he did not report the recurrence of his work-related injury until after his resignation. He also found that Claimant had a history of dishonesty and had resigned to avoid being discharged for dishonesty.

As to the medical witnesses, the Referee accepted the testimony of Dr. Harbosky that Claimant was capable of performing sedentary work but rejected without explanation the remainder of his testimony regarding the nature, cause and extent of Claimant's injury. The Referee also rejected the entire testimony of Dr. Baghai, finding it to be equivocal because of the inconsistencies regarding the level at which Claimant could work, and because an insurance form filled out by both the Claimant and Dr. Baghai indicated a date of injury over two-and-one-half years past the original date of the work-related injury. The Referee did not refer to either the report of Dr. Talbott or the report of Dr. Carothers in his findings of fact or conclusions of law.

■ The Referee concluded that Claimant did not sustain his burden to prove by competent, credible evidence that his back injury had recurred and that such injury rendered him incapable of performing his duties as a delivery driver for the Employer. He issued his decision dismissing the Claimant's reinstatement petition and the Claimant appealed to the Board. The Board affirmed the

decision of the Referee and the Claimant has petitioned this court for review.[3]

■■■ Where workmen's compensation benefits have been suspended, a claimant seeking their reinstatement bears the burden of proof. *Anderson v. Workmen's Compensation Appeal Board,* 67 Pa.Commonwealth Ct. 581, 447 A.2d 1081 (1982). Because we view Claimant's benefits as suspended but not terminated, Claimant is not required to prove that he suffered a recurrence of his work-related disability. *Pieper v. Ametek— Thermox Instruments Division,* 526 Pa. 25, 584 A.2d 301 (1990). All that a claimant seeking the reinstatement of benefits after a suspension must prove is that his earning power, through no fault of his own, is once again adversely affected. *Johnson v. Workmen's Compensation Appeal Board (McCarter Transit, Inc.),* 168 Pa.Commonwealth Ct. 439, 650 A.2d 1178, 1180 (1994). Though Employer here contends that Claimant's loss of earnings is due to his own misconduct, this circumstance "should not eternally preclude benefits where the claimant has a worsening medical condition that is directly attributable to his work-related injury rather than to any fault of his." *Southeastern Pennsylvania Transportation Authority (SEPTA) v. Workmen's Compensation Appeal Board (Pointer),* 145 Pa.Commonwealth Ct. 539, 604 A.2d 315 (1992). Where a claimant is discharged for willful misconduct, he must show a change in circumstances, for instance, that his medical condition has worsened to the point that he can no longer perform the job he had been doing at the time of his discharge. *Id.* at 543, 604 A.2d at 318. This means even though the Referee found Claimant's testimony that he complained at work about his condition not to be credible, that is not controlling. All of that went to his complaints, not whether he was medically able to perform his work.

All four medical experts opined that the Claimant suffered a work-related injury preventing him from performing his assigned job to the extent at which he could perform prior to that injury. Further, they have all expressed the opinion that Claimant continues to be symptomatic as a result of that work-related injury. If any of the testimony or reports of the four doctors are admitted then Claimant is entitled to benefits.

As to the two doctors who testified, the Referee rejected most of Dr. Harbosky's testimony except for that portion finding Claimant, capable of performing only sedentary work. Because Claimant's pre-recurrence position required him to lift up to seventy pounds, this leads to the conclusion that he is no longer able to perform his pre-recurrence position because his medical condition has recurred or worsened.

■■■ The Referee rejected the entire testimony of Dr. Baghai, Claimant's physician, because he found his uncontested medical testimony to be equivocal. The question of whether Dr. Baghai's testimony was equivocal is a question of law subject to our review. *ARMCO Incorporated v. Workmen's Compensation Appeal Board (Carrodus),* 139 Pa.Commonwealth Ct. 326, 590 A.2d 827 (1991). His testimony is equivocal if, after a review of his entire testimony, it is found to be merely based on possibilities or is less than positive. *Boring v. Workmen's Compensation Appeal Board (Combustion Engineering, Inc.),* 157 Pa.Commonwealth Ct. 277, 629 A.2d 287 (1993). The appearance of inconsistencies in medical testimony will not render such equivocal. *Somerset Welding and Steel v. Workmen's Compensation Appeal Board (Lee),* 168 Pa.Commonwealth Ct. 78, 650 A.2d 114 (1994).

The inconsistencies found by the Referee in Dr. Baghai's testimony on direct that Claimant could lift between 10 and 20 pounds, and on cross that Claimant was not able to return to work in any capacity does not render his testimony equivocal. These statements do not contradict each other but simply are Dr. Baghai's responses to two separate questions regarding the abilities of the Claimant with respect to two separate activities. On direct, Dr. Baghai opined that Claimant could lift no more than 20 pounds,

---

**3.** Our scope of review is limited to a determination of whether there has been a violation of constitutional rights, whether an error of law has been committed, and whether all necessary findings of fact are supported by substantial evidence. *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

far less than his pre-recurrence ability, and could not return to his job as a delivery driver for Employer. Then, on cross, he explained that because Claimant's pre-recurrence job required him to lift up to seventy pounds, it was his opinion that after the recurrence, Claimant could not return to work in any capacity. These statements, viewed as part of Dr. Baghai's entire testimony, do not render that testimony equivocal but rather constitute unequivocal testimony in support of Claimant's contention that he can no longer perform at his pre-injury level because his condition has now worsened.

 Finally, the Referee made no findings of fact as to the admitted, uncontested medical reports of Dr. Carothers and Dr. Talbott, apparently because he found them to be uncorroborated hearsay. While Section 422 of the Pennsylvania Workmen's Compensation Act[4] allows an exception for hearsay medical reports without sworn testimony, because the claim for compensation here involves a period in excess of twenty-five weeks, those reports do not fall within the exception. Whether those reports can be introduced is determined by what is commonly known as the "Walker Rule." In *Walker v. Unemployment Compensation Board of Review*, 27 Pa.Commonwealth Ct. 522, 367 A.2d 366 (1976), we held that, "hearsay evidence, *admitted without objection*, will be given its natural probative effect and may support a finding of the Board, *if it is corroborated by any competent evidence in the record*, but a finding of fact based *solely* on hearsay will not stand." *Walker* at 527, 367 A.2d at 370, emphasis in original.

Both reports are corroborated by the testimony of Dr. Harbosky, accepted by the Referee, that Claimant is capable of performing only sedentary work and by the unequivocal medical testimony of Dr. Baghai that Claimant cannot return to work at his pre-recurrence level of performance. The testimony of both Dr. Harbosky and Dr. Baghai state that Claimant's work level has decreased from his pre-injury level, and corroborate the reports of Carothers and Talbott which state

that Claimant could do medium level work and could not return to his prior job. *Any* accepted evidence may corroborate the unobjected to hearsay according to *Walker*; thus the evidence of record in the instant matter is sufficient corroboration for the medical reports of Drs. Carothers and Talbott.

The Referee committed reversible error by finding Baghai's testimony to be equivocal and by failing to consider uncontested medical testimony that was corroborated by accepted evidence. Accordingly, the order of the Board is reversed.

### ORDER

AND NOW, this 29th day of August, 1995, the order of the Workmen's Compensation Appeal Board, No. A93–1288, dated November 30, 1994, is reversed.

---

**4.** The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,*

77 P.S. § 835.