Charles DAVIS, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 24, 1999.
Decided June 8, 2000.

Patrick M. Donan, Philadelphia, for petitioner.

Sheryl G. Pincus, Philadelphia, for respondent.

Before SMITH, J., FLAHERTY, J., and JIULIANTE, Senior Judge.

FLAHERTY, Judge.

Charles Davis (Claimant) petitions for review from a decision and order of the Workers' Compensation Appeal Board (Board) which affirmed the Workers' Compensation Judge's (WCJ) denial of Petitioner's claim petition. We affirm the order of the Board.

Claimant was employed by the City of Philadelphia (Employer) as an automotive shop supervisor. Claimant's duties included overseeing scheduling and personnel problems and monitoring repairs. Claimant filed a claim petition on January 16, 1997 alleging that he had been injured at work on November 6, 1996.[1] At the

---

1. The claim petition was filed pursuant to     Section 410 of the Workers' Compensation

WCJ's hearings, Claimant testified that on November 6, 1996, Riley Harrison, the fleet manager for Employer, confronted Claimant concerning the conditions and repairs of certain vehicles. Claimant testified that Mr. Harrison had a stern look and criticized him, while yelling, screaming and cursing at him in front of Bob Fox and John Grubb, two other employees. Claimant testified that the incident lasted about ten minutes and during that time Mr. Harrison threatened him with demotion if the conditions were not corrected. Claimant testified that he felt berated and embarrassed and could not work the next day. The WCJ found Claimant's testimony not credible.

Claimant presented the testimony of Bob Fox and John Grubb. Mr. Fox, an administrative services director for employer, was present at the shop on November 6, 1996. Mr. Fox heard Mr. Harrison calling Claimant over to talk with him. Mr. Fox testified that Mr. Harrison spoke loud enough for him to be heard, but that he did not sound angry. Mr. Fox did not hear the actual conversation between Mr. Harrison and Claimant. The WCJ found Mr. Fox's testimony to be persuasive.

Mr. Grubb, the director of information services for Employer, testified that he was present during the interaction between Claimant and Mr. Harrison. Mr. Grubb heard Mr. Harrison tell Claimant that the vehicles were in bad condition. Mr. Grubb testified that Mr. Harrison spoke in a normal tone and was not shouting and he did not hear Mr. Harrison use profanity. Mr. Grubb heard Mr. Harrison tell the Claimant that if improvements were not made in thirty days he would talk to Claimant about whether he should be a supervisor. The WCJ found Mr. Grubb's testimony credible.

Employer presented the testimony of Mr. Harrison, Employer's fleet manager. Mr. Harrison testified that on November 6, 1996, he pointed out deficiencies in vehicles and asked Claimant to follow up on the deficiencies. Mr. Harrison testified that he spoke to Claimant in a conversational tone, that he did not curse, scream, harass, humiliate or embarrass Claimant. Mr. Harrison acknowledged that he told Claimant that if after thirty days there was not an improvement in the fleet he would have to discuss with Claimant his abilities as a supervisor. Mr. Harrison testified that this would mean progressive discipline and not necessarily dismissal.[2] The WCJ found Mr. Harrison's testimony credible.

Claimant presented the medical testimony of Richard A. Koff, M.D., a family practitioner. Dr. Koff examined Claimant on November 7, 1996. Based upon Claimant's history, physical examinations and a review of medical records, Dr. Koff opined that Claimant suffered from anxiety and depression caused by the work events of November 6, 1996. Dr. Koff did not believe that Claimant was capable of resuming his pre-injury duties. The WCJ did not find Dr. Koff's opinions persuasive because the doctor had based his opinions on the history provided by Claimant, which the WCJ found not credible.

In addition, Claimant also presented the testimony of Michael J. Mulligan, a li-

Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 751.

**2.** Specifically, Mr. Harrison testified as follows:

Q: At that time, when you said that did you indicate that his job could be on the line?

A: I indicated to him that when I return after thirty days, if it wasn't brought up satisfactory or any improvement in the fleet, that I would have to discuss with him his ability as a supervisor.

Q: Would that have meant that he would have been fired?

. . . .

A: We have a policy where there is a progressive discipline. First there is oral warning, then there's written warning, then people are given an opportunity to transfer to another location, what we call a breath of fresh air. And if all of those issues don't improve, clearly, there are suspensions and terminations. . . .

N.T. at pp 13–14, November 19, 1997 hearing.

censed psychologist. Mr. Mulligan first examined Claimant on November 11, 1996. Based upon Claimant's history, evaluations and psychological testing, Mr. Mulligan opined that Claimant suffered an acute stress reaction which was caused by the work incident on November 6, 1996. Mr. Mulligan did believe that Claimant was capable of resuming his pre-injury duties with Employer. The WCJ found that Mr. Mulligan's opinions regarding causation and diagnosis were not persuasive because his opinions were based upon the history provided by Claimant which the WCJ found not credible.

Employer presented the medical report and letter of Robert Toborowsky, M.D. Based upon Claimant's history, a review of medical records, deposition and hearing transcripts and a mental status examination, Dr. Toborowsky opined that Claimant suffered an adjustment disorder following the incident of November 6, 1996, that was directly traceable to that incident. Dr. Toborowsky opined that Claimant was fully recovered as of the June 5, 1997, examination and was capable of resuming his pre-injury duties without restrictions. The WCJ found that Dr. Toborowsky's opinions regarding causation and diagnosis were not persuasive because his opinions were based upon Claimant's history which was found by the WCJ to be not credible.

Based upon the record, the WCJ found that Claimant failed to meet his burden of proof and that he did not suffer any injury as a result of a work incident on November 6, 1996. The Claimant's claim petition was denied by the WCJ. Claimant appealed to the Board. After review, the Board issued

a decision and order dated September 9, 1999, affirming the WCJ and denying Claimant's claim petition. Claimant then petitioned this Court for review.

Claimant raises only one issue in his brief for our review and that is whether the Board erred in affirming the WCJ's denial of benefits.[3] Claimant contends that the WCJ's findings of fact are inconsistent and do not support a complete denial of Claimant's benefits, that the WCJ erred in requiring Claimant to provide corroborating testimony and that the WCJ erred by disregarding the medical testimony of every medical witness.[4] We cannot agree with Claimant's contentions.

■ Claimant claims that he sustained a psychiatric injury due to a single confrontation with Mr. Harrison at the workplace on November 6, 1996. To recover workers' compensation benefits for a psychiatric injury, a claimant must prove by objective evidence not only that he has suffered a psychiatric injury, but also that such injury is other than a subjective reaction to normal working conditions. *Martin v. Ketchum, Inc.*, 523 Pa. 509, 568 A.2d 159 (1990). The claimant is required to produce evidence that the psychiatric injury was caused by abnormal working conditions. This approach recognizes the highly subjective nature of psychiatric injuries and requires that the occurrence of the injury and its cause be adequately established. *Wilson v. Workmen's Compensation Appeal Board (Aluminum Company of America)*, 542 Pa. 614, 669 A.2d 338 (1996). In this case, the WCJ concluded that Claimant failed to meet his burden of

3. Our appellate review in workers' compensation cases is limited to determining whether findings of fact are supported by substantial evidence, whether constitutional rights were violated and whether errors of law were committed. *NGK Metals Corporation v. Workmen's Compensation Appeal Board (Bochis)*, 713 A.2d 127 (Pa.Cmwlth.1998).

4. While Claimant states that the WCJ's finding of fact are inconsistent, he does not point out any specific inconsistencies. Moreover, we do not see any inconsistencies. The WCJ

did not find credible Claimant's version of the events of November 6, 1996. Because all of the doctors' opinions were based on Claimant's version of events, the WCJ also found their opinions to be not credible or not persuasive. The WCJ then based his finding and conclusion that Claimant did not suffer a physic injury on November 6, 1996, on the Employer's version of the events which the WCJ found credible. We find no inconsistency in these findings.

proving that he suffered a compensable injury as a result of a work incident of November 6, 1996, because the WCJ did not find credible Claimant's testimony concerning the events of November 6th. Instead, the WCJ found credible the testimony of the Employer's employees whom Claimant called to testify on his behalf.

In workers' compensation cases, the WCJ is the ultimate fact-finder who must determine witness credibility and evidentiary weight. In this role, the WCJ freely evaluates the evidence offered and can accept or reject any witness' testimony, in whole or in part, including that of medical witnesses. *Hills Department Store # 59 v. Workmen's Compensation Appeal Board (McMullen)*, 166 Pa. Cmwlth. 354, 646 A.2d 1272 (1994). Here, the WCJ specifically concluded that Claimant's relevant evidence was not credible. While this Court can and should consider the competency and sufficiency of evidence presented before a WCJ, the WCJ's assessment of witness credibility is not subject to our review on appeal. We are precluded, in our appellate role, from reweighing the evidence or substituting our credibility determinations for those of the WCJ; instead, we are limited to determining whether the evidence believed by the WCJ is sufficient to support the findings and conclusions. *Hills Department Store # 59*, 646 A.2d at 1275.

In *Philadelphia Newspapers, Inc. v. Workmen's Compensation Appeal Board (Guaracino)*, 544 Pa. 203, 675 A.2d 1213 (1996) the Pennsylvania Supreme Court reversed this Court by holding that an abnormal working condition was not established by a single episode of criticism by a supervisor whom the referee determined to have used obscene language, personal derogatory remarks and verbal abuse. Even though a psychic injury resulted therefrom, Mr. Justice Zapalla cogently explained:

In assessing whether work conditions are abnormal, we must recognize that the work environment is a microcosm of society. It is not a shelter from rude behavior, obscene language, incivility, or stress. While we do not suggest that insensitive behavior is socially acceptable in the work place, it is unrealistic to expect that such behavior will not occur. Where, as here, the evidence demonstrates that the offensive behavior complained of is an isolated incident, we must conclude that an abnormal working condition has not been established.

*Id.* 544 Pa. at 215, 675 A.2d at 1219.

The facts found by the WCJ in this case which are supported by substantial evidence are a textbook example of a psychiatric injury which is a subjective reaction to normal working conditions. Claimant's testimony was not credible, but that of his two witnesses, Fox and Grubb, described an event in which the fleet manager, Harrison, was attempting to express his dissatisfaction with Claimant's job performance as a supervisor and, also, attempting to give Claimant an opportunity to improve before other remedial measures were initiated. Pointing out flaws in job performance and reminding an employee of the consequences of unsatisfactory job performance is not only a normal working condition, it is the common language of the workplace, even if it were loud and job threatening, which was not found to be the case here. It is permissible criticism in the workplace for which an employee must be emotionally fit to accept when delivered by a supervisor. The mere inability to accept criticism does not, therefore, qualify as a compensable psychic injury.

In this case, Claimant's entire argument is based upon his preferred version of the facts, not the facts as found by the WCJ. Moreover, Claimant does not specifically argue that the WCJ's facts are not supported by substantial evidence.[5] Essen-

5. Our review of the record indicates that the WCJ's findings of fact are supported by sub- stantial evidence of record.

tially, Claimant's argument is that the WCJ erred in finding Claimant's testimony incredible and the Employer's witness' testimony credible. As stated before, the WCJ's assessment of credibility of the witnesses is not subject to our review and, therefore, we will not disturb that assessment. Accordingly, we cannot find, as Claimant would have us find, that: 1) based upon Employer's doctor's testimony that he sustained a psychiatric injury since the WCJ specifically found the doctor's testimony not persuasive because it was based upon Claimant's version of events which were found not credible by the WCJ; and 2) that the fleet manager threatened him with a demotion, since the WCJ specifically found Claimant's version of the events not credible and since Mr. Harrison's testimony, quoted in footnote 2, cannot be read to imply that Claimant was threatened with demotion.

■ In addition to the credibility argument, Claimant contends that the WCJ erred by requiring that Claimant provide corroborating testimony and that such is not required by *Archer v. Workmen's Compensation Appeal Board (General Motors and Royal Insurance Co.),* 138 Pa.Cmwlth. 309, 587 A.2d 901 (1991). While Claimant does make the correct legal statement that *Archer* does not require corroborative testimony to support allegations that harassment at work was the cause of a psychiatric injury, we cannot agree with Claimant that the WCJ required corroborative testimony in this case. Based upon our review of the WCJ's decision, we do not conclude that the WCJ was requiring corroborating testimony. Instead, the WCJ in finding of fact number seven only makes an observation that the testimony of Claimant's witnesses, Grubb and Fox, corroborates Mr. Harrison's testimony rather than Claimant's. Clearly, this was only a statement made in support of the credibility determination and was not a requirement that Claimant produce corroborating testimony.

Finally, Claimant contends that the WCJ erred in rejecting the opinion of every medical expert and cites *Signorini v. Workmen's Compensation Appeal Board (United Parcel Service),* 664 A.2d 672 (Pa. Cmwlth.1995) in support of his argument that a WCJ is not permitted to reject the opinion of *every* medical expert. We do not agree that *Signorini* supports this argument. Our interpretation differs significantly from Claimant's. We believe that Claimant has misconstrued and misapplied this Court's holding in *Signorini.*

In *Signorini,* the claimant presented testimony concerning his work injury which the WCJ found incredible. In addition, medical expert testimony was presented by the claimant from his chiropractor and his treating physician. In addition, two unobjected to reports from medical witnesses obtained by the employer were submitted. The WCJ found credible in part, but rejected the remaining testimony of the claimant's chiropractor. The WCJ found incredible, in total, the testimony of the claimant's physician. The WCJ did not refer to either report of the medical experts obtained by the employer. This Court concluded that the WCJ erred because he failed to consider the uncontested medical testimony submitted in the reports, which if believed, corroborated evidence accepted by the WCJ. This Court did not hold that a WCJ could not reject the testimony of every medical witness.

■ We cannot now hold that the WCJ erred in this case in dismissing the testimony of every medical expert. It is clear from the testimony and the WCJ's decision that every medical expert relied on Claimant's version of the event's on November 6, 1996, to reach their conclusions that Claimant's subsequent symptoms and injury were caused by a work-related incident. Because the WCJ found Claimant's version to be incredible and, instead, concluded that the alleged harassment did not occur, the WCJ was free to reject the opinions of the medical experts whose opinions were

based upon this incredible version of events. Again, in *Hills Department Store # 59*, we held that the WCJ is free to accept or reject *any* witness' testimony in whole or in part, including that of medical witnesses. This Court is at a loss to find a case where it has been held that the WCJ must believe at least one of the medical witnesses and Claimant does not provide us with any case law supporting his argument to that effect.

Accordingly, we conclude that the WCJ and Board did not err in this case and, therefore, the decision denying Claimant benefits is affirmed.[6]

## *O R D E R*

AND NOW, this 8th day of June, 2000, the decision and order of the Workers' Compensation Appeal Board at No. A98–3354, dated September 9, 1999, is affirmed and benefits are denied.

6. While Claimant raised in his Petition for Review the issue of whether the WCJ made a reasoned decision, Claimant did not raise this issue in his brief to this Court. Accordingly, the issue is waived and will not be addressed by this Court, even though the Respondent has addressed the argument in its brief. *See Tyler v. Unemployment Compensation Board of Review,* 139 Pa.Cmwlth. 598, 591 A.2d 1164 (1991)(When a claimant appeals an issue, but fails to address the issue in his brief, the issue is waived).