IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hindemburgo Oliveira,                  :
                                         : No. 617 C.D. 2015
                 Petitioner    : Submitted: September 18, 2015
                                           :
                      v.                  :
                                           :
Workers' Compensation Appeal      :
Board (Panthera Painting, Inc.),      :
                                           :
                     Respondent    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                      HONORABLE P. KEVIN BROBSON, Judge
                      HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE FRIEDMAN              FILED: December 23, 2015

Hindemburgo Oliveira (Claimant) petitions for review of the March 24, 2015, order of the Workers' Compensation Appeal Board (WCAB) affirming the decision of a workers' compensation judge (WCJ) to deny Claimant's claim and penalty petitions. We affirm.

On September 28, 2012, Claimant filed a claim petition alleging that he sustained injuries on August 30, 2012, while performing work for Panthera Painting, Inc. (Employer) on a bridge on State Route 4013 in Leechburg. (WCJ's Findings of Fact, No. 1.) Claimant alleged that he sustained injuries after he fell off the bridge "approximately 60 feet into water approximately one to two feet deep." (*Id.*)

Claimant alleged that as a result of his injuries, he has been disabled since September 9, 2012. (*Id.*)

Also on September 28, 2012, Claimant filed a penalty petition alleging that Employer and Employer's insurance carrier violated the Workers' Compensation Act (Act)[1] by failing to properly investigate Claimant's August 30, 2012, work incident and failing to issue any documents accepting or denying Claimant's injuries. (*Id.*, No. 2.)

On June 5, 2013, the WCJ held a hearing on Claimant's petitions. Claimant testified that he started working for Employer in 2010 and, after a hiatus in 2011, returned to work in 2012. (*Id.*, No. 4.) Claimant's duties included vacuuming, sandblasting, and painting. (*Id.*, No. 5.) Claimant testified that between 1:30 and 2:00 p.m. on August 30, 2012, he and two coworkers, Maxsuel DaMota[2] and Dave, fell 60 feet from the bridge they were working on and landed in 17 inches of water. (*Id.*) Neither Claimant nor his coworkers were wearing safety cables. (*Id.*) Claimant testified that his supervisor, Kevin, was at the job site and advised Claimant to return to the hotel where he was staying and rest for a couple of days. (*Id.*) Claimant testified that he had pain in his back after the fall. (*Id.*)

Claimant testified that because he could not get out of the car when he arrived at his hotel on August 30, 2012, he went to a Pittsburgh hospital with

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1–1041.4, 2501–2708.

[2] DaMota also filed a claim petition against Employer and Employer's insurance carrier alleging that he sustained injuries from the same incident.

DaMota. (*Id.*, No. 6.) Claimant testified that he called Kevin, from the hospital parking lot and explained to Kevin that he needed to see a doctor. (*Id.*) According to Claimant, Kevin told him: "Don't say you fell from [the] bridge. Say something else." (*Id.*) At the hospital, Claimant had x-rays taken and was prescribed pain pills. (*Id.*) Claimant testified that he lied to hospital personnel about the cause of his injuries, telling them that he slipped on a rock by the water while looking for fish. (*Id.*) Claimant testified that he lied because he needed to work to support his family and that he had no private health insurance. (*Id.*) Although Claimant returned to work for one day that week, he testified that he was unable to physically perform the work. (*Id.*, No. 7.)

Eventually Claimant returned to Scranton and, on September 21, 2012, sought treatment at a hospital there. (*Id.*, No. 9.) Claimant told the medical personnel at the hospital that his injuries were caused by a 60-foot fall from a bridge in Leechburg. (*Id.*) Claimant testified that x-rays taken at the hospital indicated that he had broken ribs. (*Id.*) Despite seeing his supervisor Kevin on several occasions after September 21, 2012, Claimant never informed Kevin or Employer that he had broken ribs. (*Id.*) The hospital referred Claimant to Jack Henzes, M.D., a board-certified orthopedic surgeon, with whom Claimant was still treating as of the June 5, 2013, hearing. (*Id.*, Nos. 7, 11.)

DaMota testified on behalf of Claimant and confirmed Claimant's account of falling from the bridge on August 30, 2012. (*Id.*, No. 10.) DaMota also testified that he drove Claimant to the Pittsburgh hospital on August 30, 2012, and overheard Claimant speaking with Kevin on the telephone because the call was over

3

speakerphone. (*Id.*) DaMota testified that Kevin told Claimant to tell the medical personnel that Claimant fell on rocks while looking for fish. (*Id.*)

On July 15, 2013, Dr. Henzes provided deposition testimony on behalf of Claimant. (*Id.*, No. 11.) Dr. Henzes testified that he first treated Claimant on October 24, 2012, at which time Claimant told Dr. Henzes that he was working on the bridge on August 30, 2012, when he fell and sustained his injuries. (*Id.*) Dr. Henzes also reviewed x-rays of Claimant from August 30, 2012, and September 21, 2012, and computerized axial tomography scans of Claimant from September 21, 2012. (*Id.*) That same day, Dr. Henzes performed a physical examination of Claimant. (*Id.*, No. 12.) Based on his examination, his review of Claimant's prior treatment, and Claimant's account of his injuries, Dr. Henzes found that Claimant had a work-related injury secondary to a fall with an L-4 compression fracture; right lumbar transverse processes fractures; right rib fractures; a left knee contusion; and a lumbar strain. (*Id.*) Dr. Henzes advised Claimant not to work and to continue his pain medications. (*Id.*)

Dr. Henzes testified that Claimant returned to him for treatment in December 2012 and then on a monthly basis up to Dr. Henzes' deposition in July 2013. (*Id.*, No. 13.) Based on these multiple treatments and a June 2013 magnetic resonance imaging of Claimant, Dr. Henzes amended his diagnosis from Claimant's October 24, 2012, visit to include left radicular pain. (*Id.*) Dr. Henzes testified that Claimant's injuries precluded him from returning to work. (*Id.*)

Dr. Henzes testified that when he first treated Claimant on October 24, 2012, Claimant told him that Employer had told Claimant to lie to the Pittsburgh hospital's medical personnel about the cause of his injuries. (*Id.*) On cross-examination, Dr. Henzes acknowledged that he never saw the emergency room records from Claimant's visit to the Pittsburgh hospital on August 30, 2012. (*Id.*) Dr. Henzes was not aware that these records stated that Claimant's injuries were caused by Claimant slipping on rocks while looking for fish. (*Id.*) Dr. Henzes also acknowledged that he could not rule out the possibility that Claimant had sustained an additional injury after August 30, 2012, but before Claimant's September 21, 2012, treatment at the Scranton hospital. (*Id.*)

On September 4, 2013, Lucian Bednarz, M.D., who is board-certified in physical and rehabilitation medicine, provided deposition testimony on behalf of Employer. (*Id.*, No. 15.) Dr. Bednarz examined Claimant on December 19, 2012. (*Id.*) Dr. Bednarz testified that Claimant told him that he sustained his injuries after he fell 60 feet from a bridge he was working on into "a small pool of water." (*Id.*) Dr. Bednarz also reviewed various records and reports from Claimant's August 30, 2012, visit to the Pittsburgh hospital and records from Claimant's September 21, 2012, visit to the Scranton hospital. (*Id.*) Subsequently, Dr. Bednarz obtained the August 30, 2012, emergency room records, which stated that Claimant was injured when he slipped on rocks while looking for fish. (*Id.*)

Based on his physical examination of Claimant and review of Claimant's medical records, Dr. Bednarz found that Claimant had sustained multiple fractures, predominantly in the right ribs and lumbar vertebrae. (*Id.*, No. 16.) Dr. Bednarz

testified that Claimant's bones had healed by the time of his examination and that Claimant's prognosis was good because all of the fractures were nondisplaced. (*Id.*) Dr. Bednarz acknowledged that he initially determined that Claimant's injuries were work-related based on the history that Claimant provided him on December 19, 2012. (*Id.*) However, Dr. Bednarz testified that he changed his opinion as to the cause of Claimant's injuries when he obtained Claimant's August 30, 2012, emergency room records. (*Id.*) Dr. Bednarz testified:

> [I]f the traumatic events that occurred in this case occurred in a different fashion or outside of work, then it would not be a work-related injury. So my opinion on causation . . . would obviously change, but the diagnosis remains the same.

(*Id.*; N.T., 9/4/13, at 19.) Finally, Dr. Bednarz testified that a fall from 60 feet, or six stories, would "typically . . . result in death," and that he would suspect that Claimant would have sustained more severe injuries falling from that height. (WCJ's Findings of Fact, No. 16.)

The WCJ discredited Claimant's and DaMota's testimonies in their entirety. (*Id.*, No. 17.) The WCJ placed particular emphasis on Claimant lying to medical personnel on August 30, 2012, about the cause of his injuries. (*Id.*) The WCJ stated:

> Claimant's explanation for lying may be that he was told by his supervisor to lie . . . but in any event [C]laimant acknowledged lying. There is absolutely no basis therefore to even make the assumption that [Claimant] was not lying when he went to [the Scranton hospital] on September 21,

6

2012, and gave a different history as to the cause of his injuries.

(*Id.*) The WCJ found that Dr. Henzes' and Dr. Bednarz's opinions as to causation were "of no consequence" as both opinions ultimately relied on one of Claimant's two different accounts of his injuries. (*Id.*) Therefore, the WCJ concluded that Claimant failed to meet his burden of proof and dismissed Claimant's claim and penalty petitions. (WCJ's Conclusions of Law, No. 2.) Claimant appealed to the WCAB, which affirmed. Claimant now petitions this court for review.[3]

In a claim petition, the claimant bears the burden of proving all elements necessary to support an award of compensation. *Miller v. Workers' Compensation Appeal Board (Millard Refrigerated Services and Sentry Claims Service)*, 47 A.3d 206, 208 (Pa. Cmwlth. 2012). The claimant must prove that he was injured in the course and scope of his employment and that his injury was causally related to his employment. *Id.*

First, Claimant argues that the WCJ's decision is not supported by substantial evidence and is based on a capricious disregard of uncontradicted,

---

[3] Our review is limited to determining whether constitutional rights were violated, an error of law was committed, or necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704. Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Williams v. Workers' Compensation Appeal Board (USX Corporation-Fairless Works)*, 862 A.2d 137, 143 n.6 (Pa. Cmwlth. 2004). The relevant inquiry is whether substantial evidence supports the findings that were actually made, not whether the record contains evidence which might support contrary findings. *Id.* at 143-44.

7

competent testimony.[4]  Specifically, Claimant argues that the WCJ capriciously disregarded his testimony that Employer directed him to lie to medical personnel about the cause of his injuries and that he feared he would lose his job with Employer if he did not lie.  We disagree.

The WCJ is the ultimate factfinder and the sole arbiter of witness credibility and evidentiary weight, and he or she "is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part."  *Williams v. Workers' Compensation Appeal Board (USX Corporation-Fairless Works)*, 862 A.2d 137, 143 (Pa. Cmwlth. 2004).  The WCJ's credibility determinations are binding on appeal unless they were arbitrary or capricious.  *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Company)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006).  "A capricious disregard of the evidence in a workers' compensation case is a deliberate and baseless disregard of apparently trustworthy evidence."  *Williams*, 862 A.2d at 144.  Otherwise competent testimony is not "apparently trustworthy" where it is clearly contradicted by opposing testimony.  *Id.* at 145-46 n.8.  The WCJ's express consideration and rejection of testimony is, by definition, not capricious disregard.  *Id.* at 145.

Here, the WCJ summarized and considered Claimant's testimony that Employer directed him to lie to medical personnel on August 30, 2012, about the

---

[4] Although Claimant argues that the WCJ's decision is not supported by substantial evidence, his brief only applies this standard to the WCJ's credibility determinations.  However, our only inquiry as to the factfinder's credibility determinations is whether they were arbitrary or capricious.  *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Company)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006).

cause of his injuries. After doing so, the WCJ accorded no weight to this testimony, determining that it was Claimant's lie itself, not whether Employer directed Claimant to lie, that was important in determining Claimant's credibility. Although the WCJ did not explicitly address Claimant's testimony that he lied because he was afraid he would lose his job, the WCJ implicitly rejected this testimony by finding that only Claimant's lie mattered. Therefore, the WCJ did not capriciously disregard Claimant's testimony as to his reasons for lying about the cause of his injuries.

Next, Claimant argues that the WCJ capriciously disregarded Dr. Henzes' testimony that Claimant's injuries were caused by a work-related fall. However, the WCJ discredited Dr. Henzes' opinion as to the cause of Claimant's injuries because his opinion relied on Claimant's discredited account of his injuries. As the sole arbiter of witness credibility and evidentiary weight, the WCJ was free to reject Dr. Henzes' testimony on this basis. *See Davis v. Workers' Compensation Appeal Board (City of Philadelphia)*, 753 A.2d 905, 910-11 (Pa. Cmwlth. 2000) ("[T]he WCJ was free to reject the opinions of the medical experts whose opinions were based upon [the claimant's] incredible version of events."). Therefore, the WCJ did not capriciously disregard Dr. Henzes' testimony.

Next, Claimant argues that the WCJ's decision contravenes the Act's humanitarian purpose. We disagree. The Act's ultimate goal is to make injured employees whole. *Gallie v. Workers' Compensation Appeal Board (Fichtel & Sachs Industries)*, 859 A.2d 1286, 1290-91 (Pa. 2004). To that end, courts must liberally construe the Act to effectuate its humanitarian purpose, and resolve borderline interpretations in favor of the claimant. *Id.* at 1291. Here, Claimant is not disputing a

9

borderline interpretation of the Act; rather, he is disputing the WCJ's decision to discredit Claimant's testimony because Claimant lied to medical personnel. As stated above, we concluded that the WCJ's credibility and evidentiary determinations were neither arbitrary nor capricious.

Accordingly, we affirm.[5]

_____
ROCHELLE S. FRIEDMAN, Senior Judge

---

[5] Claimant did not set forth any arguments regarding the denial of his penalty petition in his brief filed with this court. Therefore, all such arguments are waived. *See City of Philadelphia v. Workers' Compensation Appeal Board (Ford-Tilghman)*, 996 A.2d 569, 572 (Pa. Cmwlth. 2010) (holding that the employer waived the issue of a fee agreement by failing to discuss the issue in its brief's statement of questions involved or argument sections).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hindemburgo Oliveira,    :
          : No. 617 C.D. 2015
     Petitioner  :
          :
    v.      :
          :
Workers' Compensation Appeal :
Board (Panthera Painting, Inc.), :
          :
     Respondent :


## O R D E R


AND NOW, this 23rd day of December, 2015, we hereby affirm the March 24, 2015, order of the Workers' Compensation Appeal Board.


            _____

            ROCHELLE S. FRIEDMAN, Senior Judge