IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Harrisburg,                      :
                                         :
                    Petitioner           :
                                         :
        v.                               :  No. 1141 C.D. 2020
                                         :  Submitted:  March 26, 2021
Allison Shuff (Workers'                  :
Compensation Appeal                      :
Board),                                  :
                                         :
                    Respondent           :


BEFORE:    HONORABLE P. KEVIN BROBSON, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                           FILED:  December 3, 2021


        The City of Harrisburg (Employer) petitions for review of an order of
the Workers' Compensation Appeal Board (Board) affirming an order of a Workers'
Compensation Judge (WCJ), which granted Allison Shuff (Claimant) total disability
benefits for a psychological injury in the form of post-traumatic stress disorder
(PTSD), depression, and anxiety, that resulted from an abnormal working condition.
Employer contends that the WCJ and the Board erred by finding that Claimant met
the required burden of proof that she sustained a compensable psychological injury
as a result of an abnormal working condition.  In the alternative, Employer argues
that the WCJ and the Board erred by awarding Claimant benefits from February 3,

2016, when Claimant failed to present competent medical evidence of a disability until March 21, 2017. Employer also argues that the WCJ's credibility determinations as to the testimony of Employer's fact witnesses were not supported by substantial evidence. Employer further argues that the WCJ and the Board erred by considering medical opinions of doctors who did not testify but which were relied upon by Employer's medical expert. Upon review, we affirm.

The relevant facts as found by the WCJ are as follows. Claimant began working for Employer as a police officer in January 2010. On January 6, 2016, Claimant filed a claim petition alleging that she suffered an injury in the nature of depression and PTSD based on two incidents that occurred in the course and scope of her employment. Both incidents involved Claimant's failure to use a taser on alleged perpetrators. Following the second incident, a meeting was held with Claimant, other officers in Claimant's platoon, and Claimant's supervisors. At the meeting, which was described as a "no-holds-barred meeting," other officers yelled at, swore, and berated Claimant. At this meeting, Officer Marc Hall told Claimant that officers who go outside their platoon, "don't stick around for long." Officers Hall, Chad McGowan, and Ryan Fetzer yelled at Claimant, called her a liar, and told her that she was "trying to get them fired." Officer McGowan told Claimant that she was a "fucking liability" and that "85% of her shift doesn't want to work with her." Officer McGowan told Claimant that he felt "she kicked him in the balls" by her not tasing the suspect. Reproduced Record (R.R.) at 501a.

After allowing the officers to yell, berate, and curse at Claimant, Corporal Galkowski brought the officers to a computer and showed them the video of the arrest that occurred during the second incident, and he agreed with Claimant that she acted appropriately in not tasing the suspect. Despite Corporal Galkowski's

2

statement, the officers continued to yell at and berate Claimant. R.R. at 502a. Claimant was placed on administrative duty on August 25, 2015, and attended a fitness for duty evaluation, where she was evaluated by Employer's physician, Dr. Louis Laguna, who indicated Claimant was not fit for duty as a police officer. Following the evaluation, Chief Thomas Carter informed Claimant there were no work activities available for her, Claimant ceased work as of February 3, 2016, and has not returned to work since that date. *Id.* at 502a-03a.

Following hearings on Claimant's claim petition, the WCJ issued a decision dated February 2, 2018, finding that Claimant suffered a work-related mental injury in the form of PTSD, depression, and anxiety as a result of the two failure to tase incidents, which culminated in the no-holds-barred meeting. R.R. at 454a-63a. Specifically, the WCJ determined that the no-holds-barred meeting where Claimant was yelled at by her coworkers constituted an abnormal working condition under the Workers' Compensation Act.[1] *Id.* at 460a-61a. The WCJ ordered Employer to pay Claimant temporary total disability benefits and ongoing medical costs from February 3, 2016, the date on which Claimant received the letter from Chief Carter indicating she was not fit for duty. *Id.* at 463a. On June 25, 2019, the Board issued an opinion and order remanding the case to the WCJ to make additional credibility determinations, in particular, as to the testimony of Employer's fact witnesses, Officer Hall, Sergeant Raymond Lyda, and Captain Deric Moody. *Id.* at 486a-95a. By decision dated December 12, 2019, the WCJ made specific credibility findings as to Employer's fact witnesses, again granted Claimant's claim petition, and ordered Employer to continue payment of Claimant's ongoing total disability benefits and medical costs as of February 3, 2016. *Id.* at 499a-508a.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

3

In that decision, the WCJ made the following findings relevant to the existence of an abnormal working condition.

12. The testimony of Officer Marc Hall concerning his actions, words and conduct at the no-holds-barred meeting is not credible. His testimony that tempers were up and voices were raised contradicts his later testimony that no one was yelling. Officer Hall admitted [that] he yelled at Claimant. Also, he still insisted that Claimant should have "fucking tased the suspect." He admitted [that] everyone was cursing. He admitted that the "no hold[s] bar[r]ed" meeting did not occur regularly. He admitted [that] the meeting was unusual.

13. The testimony of Sargent [sic] Raymond Lyda is not credible concerning his testimony that there was no yelling and screaming at the meeting. Further, Sargent [sic] Lyda's testimony is not credible because [it] is extraordinary and unusual for a supervisor to allow yelling and berating of an officer by fellow officers after she was exonerated by the video of the tasing incident. Sergeant Lyda admitted to the meeting as a "no-hold[s]-barred" meeting and acknowledges that officer McGowan told Claimant [that] she was a "fucking liability and [that] 85% of the police force didn't want to work with her."

14. The testimony of Captain Deric Moody is not credible as to whether a no-holds-barred meeting was acceptable conduct for a police department concerning a meeting [that] he did not even know about at the time [that] it was held. Captain Moody testified [that] he found out about the "no-holds-barred" meeting after it occurred.

* * *

41. This Judge finds [that] the scheduling of a "no-holds-barred" meeting under these circumstances, is an extraordinary and unusual event and [that] it constituted an abnormal working condition. This meeting was [the] last of a series of events that created psychiatric/psychological injury to the Claimant.

4

> 42. The testimony of the Claimant is found to be credible and the Claimant has been unable to work since February 4, 2016.

R.R. at 502a, 504a.

Employer appealed the WCJ's second decision to the Board, on the basis that the WCJ erred by finding that Claimant sustained a compensable work injury under the Act. On October 15, 2020, the Board affirmed the WCJ's second decision. Employer then petitioned this Court for review.[2]

In addition to the Court's usual review in a workers' compensation matter,[3] when the case involves a mental-mental injury,[4] we must also consider whether Claimant sustained her burden to prove that the mental injury she suffered is something other than a subjective reaction to normal working conditions, *i.e.*, that

---

[2] Employer requested supersedeas from the Board, which was denied. R.R. at 562a-73a. Employer then sought supersedeas from this Court, which was denied in a Memorandum and Order dated January 20, 2021.

[3] Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Bloom v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery)*, 677 A.2d 1314, 1318 n.4 (Pa. Cmwlth. 1996). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 436 (Pa. 1992).

[4] As the Supreme Court has explained:

> For purposes of determining compensation under the Act, mental or psychic injuries are divided into three categories: mental-mental, whereby a mental or psychic condition is caused by a psychic stimulus; mental-physical, whereby psychic injury manifests itself in some physical form; and physical-mental, whereby a physical injury results in psychic distress.

*Payes v. Workers' Compensation Appeal Board (Pennsylvania State Police)*, 79 A.3d 543, 550 (Pa. 2013). Here, Claimant is asserting a mental-mental injury.

5

Claimant's mental injury is a result of abnormal working conditions. *Payes v. Workers' Compensation Appeal Board (Pennsylvania State Police)*, 79 A.3d 543 (Pa. 2013); *Pennsylvania Liquor Control Board v. Workers' Compensation Appeal Board (Kochanowicz)*, 108 A.3d 922 (Pa. Cmwlth. 2014). In *Payes*, the Supreme Court held that a state police trooper sustained his burden of proving that an abnormal working condition existed and that he was entitled to benefits for a mental-mental injury when he accidentally struck and killed a pedestrian with his police car, attempted to revive her, and attempted to divert traffic from hitting him and the pedestrian. *Payes*, 79 A.3d at 556-57. As our Supreme Court stated, the determination of whether Claimant's mental injury is a result of abnormal working conditions is a mixed question of law and fact. *Id.* at 549. Mental or psychic injuries are highly fact sensitive, and for the actual working conditions to be considered abnormal, they must be considered in the context of specific employment. *Id.* at 552. Such a fact-sensitive inquiry "'requires deference to the fact-finding functions of the WCJ,'" and, therefore, review of those factual findings is limited to determining whether they are supported by substantial evidence, and they may only be overturned "'if they are arbitrary and capricious. Thus, . . . appellate review of this question [is] a two-step process of reviewing the factual findings and then the legal conclusion.'" *Id.* (quoting *RAG (Cyprus) Emerald Resources, L.P. v. Workers' Compensation Appeal Board (Hopton)*, 912 A.2d, 1278, 1284 n.6 (Pa. 2007)).

Here, Employer argues that the WCJ and the Board erred in finding that being yelled at by co-workers or supervisors at a meeting constituted an abnormal working condition, citing *Philadelphia Newspapers, Inc. v. Workmen's Compensation Appeal Board (Guaracino)*, 675 A.2d 1213 (Pa. 1996) (single episode of criticism which included profanity and which occurred outside the presence of

6

coworkers does not constitute an abnormal working condition). Employer also argues that what occurred at the meeting did not rise to an abnormal working condition, especially for police officers, whose employment is by nature highly stressful. In further support, Employer cites *Rydzewski v. Workers' Compensation Appeal Board (City of Philadelphia)*, 767 A.2d 13 (Pa. Cmwlth. 2001), and *Young v. Workers' Compensation Appeal Board (New Sewickley Police Department),* 737 A.2d 317 (Pa. Cmwlth. 1999). In *Rydzewski*, our Court held that a City of Philadelphia police officer was not subjected to abnormal working conditions and could not recover for a mental-mental injury when he witnessed two fellow officers get shot, one who later died and one who lived and was paralyzed. Our Court held that "[c]laimant did not prove he experienced a working condition that was particularly abnormal for a person in his line of work." *Rydzewski*, 767 A.2d at 16.

In *Young*, our Court held that a police officer was not subjected to abnormal working conditions and could not recover for a mental-mental injury when he served an arrest warrant in a domestic violence case, the subject threatened the claimant and himself with a gun, but was later subdued and taken into custody. The Court held that the claimant failed to present sufficient evidence to prove that the "stand-off event was an abnormal working condition for a police officer, where certain stressful and even life-threatening events and occurrences are expected" due to the nature of the employment. *Young*, 737 A.2d at 322. Employer also relies on *Griffin v. Workers' Compensation Appeal Board (Luzerne County Children and Youth)* (Pa. Cmwlth., No. 1956 C.D. 2016, filed January 4, 2018),[5] where this Court held that a caseworker was properly denied benefits for a mental-mental injury when

---

[5] *See* Pa.R.A.P. 126(b) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. []Non-precedential decisions . . . may be cited for their persuasive value.").

7

a child on her caseload was later killed while in her parent's custody. Relying on the facts as found by the WCJ, this Court held that such an event was not an abnormal working condition for a caseworker, and because the caseworker did not directly experience a traumatic event at work, this case was distinguishable from *Payes* and *Kochanowicz*. *Griffin*, slip op. at 6.

Claimant responds that Employer's reliance on *Philadelphia Newspapers*, *Rydzewski*, and *Young* is misplaced because all three cases were decided before our Supreme Court decided *Payes*, which set forth a new analysis of mental-mental cases under the Act. Claimant argues that the WCJ did not err in his findings or conclusion that Claimant suffered a compensable mental-mental injury, where the WCJ found that the two arrest incidents followed by the no-holds-barred meeting were abnormal working conditions. Claimant argues that the WCJ properly found that Employer's holding such a meeting, and how it conducted the meeting, was an abnormal working condition even for an individual working as a police officer.

We cannot conclude that the WCJ erred in finding "the scheduling of a 'no-holds-barred' meeting under these circumstances, is an extraordinary and unusual event and it constituted an abnormal working condition. This meeting was [the] last of a series of events that created a psychiatric/psychological injury to the Claimant." R.R. at 504a. The WCJ found Claimant credible when she testified that she had never heard about a no-holds-barred meeting being held before, and that such meetings were not a part of police procedure. *Id.* at 325a. Officer Hall admitted that no-holds-barred meetings did not occur regularly and that the meeting was unusual. *Id.* at 324a, 325a. In the memorandum prepared following the meeting, Sergeant Lyda stated that other officers commented "this was the first time that

8

something like this (room discussion) has ever taken place," thus admitting the meeting was unusual. *Id.* at 31a. These facts, found by the WCJ and supported by the record, support the WCJ's legal conclusion that under *Payes*,

> [t]he actions and conduct of the officers of the City of Harrisburg were extraordinary and unusual towards the Claimant and created an abnormal work condition. The holding of a "no-holds-barred" meeting is an extraordinary and unusual event for any organization that has a chain of command. The holding of such a meeting is an abnormal working condition.

*Id.* at 505a.

Here, the WCJ found that an abnormal working condition existed when two arrests occurred where Claimant was criticized by other officers for not using her taser, followed by a no-holds-barred meeting that lasted about an hour, where Claimant was berated, and where her supervisors stated that the video of the incident showed that she acted appropriately, but then allowed officers to continue berating her. The WCJ found Claimant's testimony to be credible that the prior failure-to-tase incidents, culminating in the no-holds-barred meeting, caused her to fear that she would not be backed up by other officers. R.R. at 264a. Claimant's reaction was not merely based on her perceptions, but on statements made by her fellow officers, which included that "she was a fucking liability," and that "85% of the platoon didn't want to work with her." *Id.* at 347a. We recognize that the finding of an abnormal working condition is "highly fact sensitive" and "must be considered in the context of specific employment." *Payes*, 79 A.3d at 552. Even so, we conclude that the WCJ did not err when he found that the events described here were an abnormal working condition, even for a police officer whose employment requires her to work in a very stressful environment.

9

Employer further argues that the WCJ erred by awarding Claimant benefits from February 3, 2016, the date when Employer notified Claimant that she was unfit for duty. Rather, Employer argues that if benefits are awarded, they should begin on March 21, 2017, the date when Dr. Christian Kcomt (Claimant's expert) began treating Claimant. Employer argues that Claimant failed to present competent medical evidence that as of February 3, 2016, she has a psychological condition and that the condition was caused by her employment. Employer correctly argues that Claimant has the burden to prove that she has a psychological condition that was caused by her employment. *Lowe v. Workmen's Compensation Appeal Board (Lowes Auto Sales, Inc.)*, 619 A.2d 411, 414 (Pa. Cmwlth. 1992). However, we cannot agree that the WCJ and the Board erred by awarding Claimant benefits from February 3, 2016.

Claimant's expert, a board-certified psychiatrist, began treating Claimant on March 21, 2017, when he took over Claimant's treatment after her prior treating physician, Dr. John Mira, retired due to health issues. R.R. at 432a. Claimant's expert testified by deposition that Claimant suffered from major depressive disorder, anxiety disorder, PTSD, and an eating disorder in remission, and that she was unable to perform the job duties of a police officer due to the potential for mental health decompensation. *Id.* at 181a-82a. Claimant's expert began treating Claimant on March 21, 2017, and he admitted that he was unable to render an opinion as to her diagnosis or her ability to return to work before he met her. *Id.* at 188a. However, Claimant's expert further testified that he reviewed her medical records, including those from her prior treating physician, after which he opined, within a reasonable degree of medical certainty, that Claimant's psychological conditions were "due to direct issues because of what she experienced

10

as a police officer," which the WCJ found to be credible. *Id.* at 186a, 504a. Based on this evidence, we agree with the Board that "substantial, competent evidence supports [that] Claimant's work-related medical condition disabled her from working as a police officer for [Employer] as of February 3, 2016." *Id.* at 543a.

Employer next argues that the WCJ erred in determining its fact witnesses were not credible, specifically, Officer Hall, Sergeant Lyda, and Captain Moody, because those credibility determinations are not supported by substantial evidence. R.R. at 502a. Employer then attempts to point out specific pieces of testimony from these fact witnesses which, it argues, demonstrate that the WCJ's credibility determinations lack substantial evidence. This argument is misplaced. In workers' compensation cases, "the WCJ is the ultimate fact-finder who must determine credibility and evidentiary weight. In this role, the WCJ freely evaluates the evidence offered and can accept or reject any witness' testimony, in whole or in part, including that of medical witnesses." *Davis v. Workers' Compensation Appeal Board (City of Philadelphia)*, 753 A.2d 905, 909 (Pa. Cmwlth. 2000). As this Court further stated, "[w]hile this Court can and should consider the competency and sufficiency of evidence presented before a WCJ, the WCJ's assessment of witness credibility is not subject to our review on appeal." *Id.* Therefore, we find that the WCJ did not err when, on remand, he made specific credibility determinations as to Employer's fact witnesses, based on inconsistencies within their testimony, particularly since it was specifically directed to do so by the Board.

Finally, Employer argues that the WCJ erred by considering hearsay medical reports relied on by its expert, Dr. D. Gladys Fenichel (Employer's expert). Employer argues that the WCJ erred in considering reports from Claimant's prior treating physician, from Employer's physician Dr. Louis Laguna, and from the

11

Renfrew Center, where Claimant received in-patient treatment, when those individuals did not testify and were not subject to cross-examination, and when Employer objected to those reports as hearsay. Employer is correct in asserting that hearsay evidence, properly objected to, is not competent evidence to support a finding of fact. *Flanagan v. Workmen's Compensation Appeal Board (U.S. Steel Corporation)*, 598 A.2d 613, 615 (Pa. Cmwlth. 1991). Here, however, the WCJ did not rely on these hearsay expert reports to make findings about their opinions, but to make a credibility determination as to the testimony of Employer's expert.

Employer's expert testified that Claimant's disability was not causally related to her employment, based on one meeting with Claimant, and based on medical reports from Claimant's past treatment providers, which were attached as exhibits to her deposition testimony, and on the report of Claimant's expert. R.R. at 33a-126a. The WCJ found the testimony of Claimant's expert to be credible, but gave less weight to Employer's expert "because she has evaluated the Claimant one time. The testimony of [Claimant's expert] is not credible because she was contradicted by multiple medical providers, whose reports and records she had reviewed and commented on." *Id.* at 504a. The WCJ also found that the procedure of asking Employer's expert "to comment on other doctor's medical reports and records waives any objection that [Employer] may have to discussion of those in the deposition or consideration of those exhibits by this Court." *Id.* at 503a.

As this Court stated,

> it has long been held that a medical witness may express an opinion based upon medical records of others even if those records were not introduced into evidence so long as they are the kind of records upon which the medical professional customarily relies in the practice of their profession.

12

*Mithani v. Workers' Compensation Appeal Board (Mt. Airy Lodge)*, 730 A.2d 566, 569 (Pa. Cmwlth. 1999). Here, we cannot conclude that the WCJ erred in considering the medical reports reviewed by Employer's expert, which were attached as exhibits to her deposition testimony, to make a credibility determination, when it is customary for a medical expert to review such reports, and when Employer asked its expert to comment on these reports.

For the foregoing reasons, we affirm the Board's order.

_____

MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Harrisburg, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : No. 1141 C.D. 2020 |
| | : | |
| Allison Shuff (Workers' | : | |
| Compensation Appeal | : | |
| Board), | : | |
| | : | |
| Respondent | : | |

**O R D E R**

AND NOW, this 3rd day of December, 2021, the order of the Workers' Compensation Appeal Board dated October 15, 2020, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge