IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lori A. Carpenter, : 
                        :
            Petitioner : 
                        :
         v. : No. 379 C.D. 2021
                        : Submitted: July 23, 2021
Family Dollar Stores of : 
Pennsylvania, LLC : 
(Workers' Compensation : 
Appeal Board), : 
                        :
         Respondent :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge[1]
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE J. ANDREW CROMPTON, Judge[2]

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                        FILED: January 14, 2022


Lori Carpenter (Claimant) petitions this Court for review of the March 10, 2021 order of the Workers' Compensation Appeal Board (Board), which affirmed the January 31, 2020 decision and order of the Workers' Compensation Judge (WCJ), which granted the termination petition of Family Dollar Stores of

---

[1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn Jubelirer became President Judge.

[2] The Court reached the decision in this case prior to the conclusion of Judge Crompton's service on the Commonwealth Court.

Pennsylvania, LLC (Employer), and denied Claimant's review and penalty petitions. After careful review, we affirm.

The relevant facts as found by the WCJ are as follows.[3]  On February 18, 2017, Claimant sustained a work-related injury during the course of her employment with Employer, when she was loading gallon water bottles on a shelf, the top of the shelf broke, the display fell, and it knocked Claimant to the ground. C.R. at 33.  Employer issued a notice of temporary compensation payable, which converted to a notice of compensation payable (NCP),[4] accepting the injuries as "multiple body parts; contusion to the face; right chest wall; and lower back injury." *Id.*  Claimant received full indemnity and medical benefits, and she has not returned to work.  On November 20, 2018, Employer filed a termination petition alleging that Claimant had fully recovered from her work injuries and was able to return to work as of November 2, 2018, based on the independent medical examination (IME) and opinions of Dr. Richard Bennett, who is board certified in neurology and electromyography. *Id.*  Claimant denied the allegations in Employer's termination petition. *Id.*  On February 1, 2019, Claimant filed a penalty petition and a review petition, alleging that certain medical bills were unpaid, and seeking to amend the nature and description of her injury to include "traumatic brain injury; cervical injury; psychological injury stemming from physical injury; and chronic pain stemming from physical injury." *Id.*  Employer denied the allegations in Claimant's petitions, all the petitions were consolidated, and hearings were held before the WCJ.

---

[3] The January 31, 2020 decision and order of the WCJ appears in the Certified Record (C.R.) at 30-54.

[4] Although Employer issued an amended, temporary NCP for medical expenses only, counsel agreed before the WCJ that Claimant was receiving both medical and indemnity benefits for the injuries as described.

2

With respect to its termination petition, Employer presented deposition testimony of Dr. Bennett. With respect to her review and penalty petitions, Claimant presented her own testimony, as well as deposition testimony from three of her treating physicians: Dr. Paul Horchos, who treated Claimant for concussion symptoms; Dr. Kenneth Zahl, who treated Claimant for various pain symptoms; and, Dr. Marifel Estrada-Currie, a clinical psychologist who conducted a psychological evaluation for purposes of evaluating Claimant's suitability for a spinal cord stimulator, and then continued to counsel her after the evaluation. In response to Claimant's review petition, Employer presented Dr. Bennett's testimony and deposition testimony of Dr. Gladys Fenichel, who is board certified in psychiatry and neurology. Dr. Fenichel performed an IME of Claimant on June 25, 2019, in light of Dr. Bennett being unable to comment on Claimant's alleged psychological injuries. C.R. at 38.

The WCJ summarized at length and in detail the testimony of all witnesses and made the following relevant findings. Claimant testified that she had not recovered from her work injuries; that she experienced memory and speech difficulties, pain and tingling in her head, neck, back, left side of her body, and "shocking" pain in her legs; that she has daily pain described as an "eight to a ten" (out of a 10-point scale); and that she was only taking vitamins, and occasionally medical marijuana to treat for her pain. C.R. at 34. The WCJ found Claimant's testimony "not persuasive and place[d] more weight on the medical evidence," based on his observation of Claimant's "bearing and demeanor at the time of her testimony." *Id.* at 48. The WCJ found Dr. Bennett's testimony more credible than the testimony of Dr. Zahl and Dr. Horchos as to whether Claimant had fully recovered from her accepted work injuries. *Id.* The WCJ's detailed finding of fact

3

67 regarding Dr. Bennett's testimony is at the heart of Claimant's arguments against Employer's termination petition, and states as follows:

> This Judge finds the testimony of Dr. Bennett more credible than the testimony of Dr. Zahl and Dr. Horchos. In that regard, Dr. Bennett opined that Claimant fully recovered from her accepted injuries of a facial contusion, chest wall contusion, and lumbar strain, as well as a closed head injury and a possible cervical contusion based upon his examination of the Claimant and his review of the medical records. Dr. Bennett reviewed his examination findings and the lack of objective findings. Dr. Bennett noted that a CT scan [computed tomography (CT) scan] of the lower spine dated March 7, 2017 as well as a March 21, 2017 MRI [magnetic resonance imaging (MRI) scan] of Claimant's cervical spine revealed nothing. Moreover, Dr. Bennett testified that he reviewed a February 2017 MRI which indicated Claimant had a broad-based disc protrusion at L2-L3 but Dr. Bennett clarified that it was a degenerative age-related change and these were non-trauma findings and nothing to do with Claimant's work injury. Conversely, Dr. Zahl opined Claimant had spondylolisthesis of L4-S1 and also a herniation at L5-S1 which was hitting the L5 and S1 nerve roots. However, Dr. Bennett opined there were several EMGs [electromyography (EMG)] done of Claimant's upper and lower extremities and both studies were normal and there was no evidence of any neuropathy or radiculopathy. In fact, although Dr. Horchos acknowledged he was not treating Claimant's cervical and back complaints, Dr. Horchos acknowledged that Claimant's EMG nerve conduction studies did not appear to show a pinched nerve. Despite opining Claimant had a herniation at L5-S1 "that was hitting the L5 and S1 nerves," Dr. Zahl admitted that the EMG/[n]erve [c]onduction studies of both the upper and lower extremities failed to find evidence of radiculopathy. Interestingly, Claimant reported to Dr. Zahl she had tingling throughout the whole entire left arm and left leg into the left fourth and fifth fingers as well as to the left fourth and fifth toes but the EMG findings revealed nothing. Dr. Zahl was not even aware that Dr.

4

Horchos found Claimant's straight leg raising test was negative throughout his examination of Claimant. This Judge does not find the opinions of Dr. Zahl credible that the MRI revealed a herniation hitting the L5 and S1 nerve roots. In further support of Dr. Bennett's testimony, on April 19, 2017[,] Dr. Horchos documented his examination findings noting that Claimant's cervical range of motion was good, bilateral upper extremity strength was good, bilateral lower extremity strength was good, and straight leg raising and femoral nerve stretch testing were both negative. Following a July 2017 examination, Dr. Horchos did not see Claimant again until January 2, 2018 and again Claimant's bilateral extremities strength was good and Claimant's bilateral lower extremities strength was also good. Claimant's straight leg raising and femoral stretch nerve testing were both negative. After February 2018, Claimant did not return to Dr. Horchos until May 2019 and again Dr. Horchos noted Claimant's cervical range of motion was good to forward bending, extension, side bending, and rotation. Upper and lower bilateral extremities were good. Claimant's straight leg raising and femoral nerve stretch testing were both negative.

C.R. at 48-49.

As to Claimant's review petition, in which she sought to amend her work injuries to include traumatic brain injury, cervical injury, psychological injury stemming from physical injury, and chronic pain stemming from physical injury, Claimant presented the testimony of her treating physicians Dr. Zahl, Dr. Horchos, and Dr. Estrada-Currie. Dr. Zahl opined that Claimant suffered from a traumatic brain injury and post-concussion syndrome, as well as complex regional pain syndrome (CRPS), as a result of the work injuries. Dr. Horchos opined that Claimant suffered a cerebral concussion as a result of the work injuries. Dr. Estrada-Currie opined that Claimant suffered from major depressive disorder and generalized anxiety disorder as a result of the physical work injuries. C.R. at 42-43, 44, and 46. The WCJ found Dr. Bennett's opinion that Claimant did not sustain a traumatic brain

5

injury aside from a closed head injury more credible than Dr. Zahl's diagnosis of post-concussion syndrome, and Dr. Horchos' diagnosis of cerebral concussion. Dr. Bennett's review of Claimant's medical records revealed that Claimant denied loss of consciousness, nausea, or vomiting when she was seen in the Pocono Medical Center's emergency department on the same day as the work incident, and that she refused analgesics and could walk "without difficulty" down the hall when she was seen at the St. Luke's Hospital emergency room the next day. When Claimant visited the Lehigh Valley Hospital emergency room in August 2017, the results of various diagnostic testing "revealed nothing," and the results of her neurological exam were normal. The WCJ found "it significant that the contemporaneous medical records indicate that Claimant did not lose consciousness and supports Dr. Bennett's opinions that Claimant suffered a closed head injury but was recovered by the time of his examination on November 2, 2018." C.R. at 49-50. The WCJ noted that Dr. Horchos admitted "the medical records document that Claimant has a past history of migraines and an ataxic gait." *Id.* at 50. The WCJ also noted that Claimant had a treatment gap with Dr. Horchos from February 2018 until May 2019, and that his opinion that Claimant could not walk as a result of her work injury was not consistent with contemporaneous medical records documenting that Claimant could walk without difficulty. *Id.*

The WCJ further found Dr. Bennett credible when he opined that "he found no evidence of [CRPS] or complex sympathetic dystrophy, as it relates to the work injury." C.R. at 50. Dr. Bennett testified that Claimant "does not have findings consistent with the Budapest criteria," which are based in part on subjective complaints of pain used to diagnose CRPS. *Id.* at 50-51. Dr. Bennett also testified that he found no objective indicators of CRPS when he examined Claimant, such as

6

changes in skin tone or color, changes in skin temperature, or changes in nails. *Id.* The WCJ found it significant that "Claimant reports complaints with her back and neck which are not supported by the MRI and EMG studies." *Id.* at 51. The WCJ also noted that Dr. Zahl testified that he did not treat Claimant from November 26, 2018, until April 17, 2019, even though he believed Claimant was suffering from CRPS. The WCJ further noted that Dr. Zahl testified he could not recall Claimant wearing fitted pants or socks to her appointments, but when she appeared before the WCJ, Claimant was wearing fitted pants (not loose sweat pants) and socks. Thus, the WCJ rejected the opinions of Dr. Zahl as "not credible when inconsistent with the opinions of Dr. Bennett." *Id.*

As to the psychological conditions stemming from her work injury, Dr. Estrada-Currie opined that Claimant's major depressive disorder, generalized anxiety disorder, and cognitive deficits were related to her work injury. Dr. Estrada-Currie also admitted that Claimant had multiple challenges in her life not related to her work injury that could impact her psychological health, including trauma from an automobile accident in 2008, stress over her younger autistic son, stress over her older son dealing with legal and court issues, and a stressful relationship with her partner. C.R. at 46-48.

In response, Employer presented the deposition testimony of Dr. Fenichel, who performed an IME on June 25, 2019, during which she examined and interviewed Claimant, and reviewed medical records. During the examination and interview, Dr. Fenichel observed that Claimant described suffering from chronic and severe pain in her head, neck, back and extremities, in what she described as "shocking pain," and that "even breathing (exhaling and inhaling) makes her feel like her spine will break." *Id.* at 38-39. During the IME, Dr. Fenichel gave Claimant

7

a mental status examination, on which Claimant scored 29 out of 30, meaning Claimant had no cognitive problems based on the tests. *Id.* at 39. Based on her examination and review of medical records, Dr. Fenichel opined that Claimant did not suffer a psychiatric disorder or cognitive disorder as a result of the work injuries, and did not currently suffer from major depressive disorder or generalized anxiety disorder as a result of the work injuries. *Id.* at 39-41.

The WCJ found Dr. Fenichel's testimony more credible than Dr. Estrada-Currie's testimony, based on Dr. Fenichel's qualifications, her review of Claimant's medical records, her review of testimony from Claimant's treating physicians, and her review of Claimant's testimony. C.R. at 51. The WCJ found Dr. Fenichel's testimony more credible because Dr. Fenichel is a medical doctor and Dr. Estrada-Currie is a psychologist. Dr. Fenichel's review of Claimant's medical records revealed that Claimant presented her symptoms differently to Dr. Fenichel than she did to her treating physicians, and that Claimant displayed no signs of anxiety or depression within three months of her work injury. Dr. Fenichel observed that Claimant had "dramatic displays of pain," during the IME, but did not demonstrate problems as to concentration. *Id.* Dr. Fenichel further opined that neither major depression nor generalized anxiety develop in response to a particular life event such as the work injuries, and instead could be caused by the other stresses admittedly present and ongoing in Claimant's life. *Id.* Thus, the WCJ rejected Dr. Estrada-Currie's testimony to the extent her testimony was inconsistent with Dr. Fenichel's, and he found Dr. Fenichel's testimony on this issue as more credible than Dr. Estrada-Currie's, finding it significant "that Dr. Fenichel performed testing and reviewed the medical records." *Id.* at 52.

8

Based on his findings, the WCJ concluded that Employer met its burden to terminate Claimant's benefits as of November 2, 2018, the date of Dr. Bennett's IME. The WCJ also concluded that Claimant failed to meet her burden of proof to amend her work injuries to include traumatic brain injury, cervical injury, psychological injury stemming from physical injury, and chronic pain stemming from physical injury. Finally, on the issue of Claimant's penalty petition, in which she alleged that Employer failed to pay certain medical bills, the WCJ found that Claimant failed to meet her burden of proof to show which bills had been paid or not paid, and that Claimant failed to prove that certain bills for Dr. Zahl's treatment relating to her CRPS were related to her accepted work injuries. The WCJ also found that Employer engaged in a reasonable contest. *Id.* at 52-53.

Claimant then appealed the WCJ's order granting Employer's termination petition, and dismissing her review and penalty petitions to the Board, which affirmed the WCJ.[5] On appeal to the Board, Claimant questioned the WCJ's findings, especially regarding Dr. Bennett's testimony. Claimant argued that Dr. Bennett's testimony ignored a January 2018 report from Dr. Peter Feinstein, who performed an earlier IME, which found that Claimant could be suffering from CRPS based on the history Claimant provided, but that she does not have skin mottling, skin temperature changes, or other physical signs that could go along with CRPS.[6] The Board stated that, on cross-examination, Dr. Bennett testified that as part of his medical records review, he reviewed Dr. Feinstein's report before he prepared his

---

[5] The March 10, 2021 decision and order of the Board appears in the Certified Record at 78-97.

[6] Neither Employer nor Claimant asked Dr. Feinstein to testify, and Dr. Feinstein did not testify, before the WCJ. Dr. Feinstein's report was discussed as part of Dr. Bennett's review of Claimant's medical records for his IME. Reproduced Record (R.R.) at 176a-84a.

9

own report, but that he did not review it before conducting his examination of Claimant. However, Dr. Bennett testified that "it would have made and makes no difference in his opinion." C.R. at 89. The Board stated that although "Claimant makes much of Dr. Bennett's focus on neurological testing and his neurological point of view," Dr. Bennett indicated several times that "based on his review of [Claimant's] records and his physical examination of Claimant, which revealed no objective findings to suggest any ongoing work-related conditions, that she fully recovered from her work injuries." *Id.* at 93. The Board considered Claimant's various arguments and concluded that Dr. Bennett's testimony was competent and did not leave doubt. *Id.* at 93-94. The Board rejected Claimant's argument that Employer concealed the first IME report of Dr. Feinstein from the second IME doctor, Dr. Bennett, and that Employer unilaterally stopped paying Claimant's work-related medical bills, concluding that Employer presented a reasonable contest. Because Claimant was not successful on her review or penalty petitions, the Board concluded that Claimant did not meet her burden to prove that Employer violated Section 440 of the Workers' Compensation Act (Act),[7] and affirmed the WCJ's

---

[7] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of February 8, 1972, P.L. 25, 77 P.S. §996. Section 440 states in relevant part that where an insurer has contested liability, including petitions to terminate or modify awards, and where claimant prevails in whole or in part, claimant shall be awarded a reasonable sum for costs incurred, except that the cost for attorney's fees may be excluded when a "reasonable basis" for the contest has been established by the employer or insurer.

denial of Claimant's penalty petition.[8]   Claimant then petitioned our Court for review.[9]

Claimant presents seven questions for our review, with the first six relating to the WCJ's findings regarding Dr. Bennett's testimony, and the final question relating to the WCJ's finding that Employer presented a reasonable contest. Claimant argues that Dr. Bennett's testimony failed in several ways to provide substantial evidence to support the WCJ's findings, and that the WCJ committed several errors of law in interpreting Dr. Bennett's testimony.  As we review the issues presented by Claimant, we are mindful that in workers' compensation cases, the "WCJ is the ultimate fact-finder who must determine credibility and evidentiary weight.  In this role, the WCJ freely evaluates the evidence offered and can accept or reject any [witnesses'] testimony, in whole or in part, including that of medical witnesses." *Davis v. Workers' Compensation Appeal Board (City of Philadelphia)*, 753 A.2d 905, 909 (Pa. Cmwlth. 2000).  As this Court further stated, "[w]hile this Court can and should consider the competency and sufficiency of evidence presented before a WCJ, the WCJ's assessment of witness credibility is not subject to our review on appeal." *Id.*

---

[8] Claimant's petition to this Court seeks review of the WCJ's order granting Employer's termination petition, and his denial of Claimant's review petition only.  Claimant did not seek review of the substance of the WCJ's denial of her penalty petition, so we will not address the penalty petition further.

[9] Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Bloom v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery)*, 677 A.2d 1314, 1318 n.4 (Pa. Cmwlth. 1996).  Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 436 (Pa. 1992).

To prevail on a termination petition, "an employer bears the burden of proving by substantial evidence that a claimant's disability ceased, or any remaining conditions are unrelated to the work injury." *Westmoreland County v. Workers' Compensation Appeal Bord (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008) (internal citations omitted). An employer may satisfy its burden by presenting "unequivocal and competent medical evidence of the claimant's full recovery from her work related injuries." *Id.* As to Claimant's review petition in which she sought to modify the accepted injuries to include additional ones, the burden of proof rests with Claimant to establish the existence of additional compensable injuries. *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577, 582 (Pa. 2009). If the connection between the alleged disability and the work accident is not obvious, a claimant must provide unequivocal medical testimony to establish that the additional compensable injuries were caused by the work accident. *Fotta v. Workmen's Compensation Appeal Board (U.S. Steel/USX Corporation Maple Creek Mine)*, 626 A.2d 1144, 1146 (Pa. 1993).

Claimant first argues that the WCJ erred in finding that Employer met its burden in the termination petition because Dr. Bennett testified that he could opine on Claimant's ability to return to work "from a neurological standpoint," thus failing to prove that Claimant was fully healed from all of her physical work-related injuries. R.R. at 153a, 154a. Claimant argues that because Dr. Bennett limited his opinion to Claimant's recovery from a neurological point of view, that his opinion failed to provide substantial evidence that Claimant was fully recovered from her physical injuries, which were described as injuries to multiple body parts, contusion to the face, right chest wall, and lower back injury.

12

Employer responds that Dr. Bennett's testimony, when viewed as a whole, provided substantial evidence that Claimant had recovered from all her accepted work injuries and was able to return to work. Further, Employer argues that Claimant's attempt to take Dr. Bennett's isolated comment out of context should fail, when it was elicited on cross-examination in response to a hypothetical question. Employer responds that Dr. Bennett did not testify that he would have to refer Claimant to an orthopedist to assess whether she had recovered from her physical injuries, but rather, answered a broadly worded hypothetical question on cross-examination, as follows:

> Q: Now, neurologically somebody could be, not have a neurological issue, but could still have issues with her back pain, correct?
>
> A: Correct.
>
> Q: So the fact that neurologically you didn't find anything wrong with her back, doesn't mean that she didn't have a back condition that kept her from working?
>
> A: If there is a significant problem, I refer that to an orthopedic assessor.

R.R. at 154a. Employer further responds that in Dr. Bennett's report and testimony, and in his completion of a physician's affidavit of recovery, Dr. Bennett opined numerous times that Claimant had fully recovered from the accepted work injuries of facial contusion, right chest wall contusion, and lower back injury, as well as from a closed head injury. *Id.* at 140a, 172a-74a. Employer further responds that Dr. Bennett did not admit that he could not evaluate any orthopedic injuries, such as the Claimant's rib contusion, but in fact testified that he could, because "[i]t's a medical issue. She had no complaints and no findings of a wrist [sic/rib] contusion." *Id.* at 154a. Employer further notes that Dr. Bennett testified that he found no objective

13

evidence of Claimant's work injuries during his examination or from his medical records review, including lumbar strain, in support of his opinion of Claimant's full recovery. *Id.* at 136a-38a, 139a, 154a. Employer further responds that this Court has previously held that although Dr. Bennett is a neurologist, he is also a medical physician who is qualified to render opinions on medical conditions such as knee pain, orthopedic injuries, and shoulder and back strains. *See, e.g.*, *Baumann v. Workers' Compensation Appeal Board (Kellogg Company)*, 147 A.3d 1283 (Pa. Cmwlth. 2016); *Senestant v. Workers' Compensation Appeal Board (HIS of PA at Broomall)* (Pa. Cmwlth., No. 1852 C.D. 2007, filed February 12, 2008); [10] *Rondolone v. Workers' Compensation Appeal Board (SEPTA)* (Pa. Cmwlth., No. 1021 C.D. 2013, filed November 1, 2013); *Barr v. Workers' Compensation Appeal Board (GMRI Inc. and LM Insurance Corporation)* (Pa. Cmwlth., No. 741 C.D. 2020, filed April 16, 2021). Employer further responds that it was not required to present testimony from an orthopedist, such as Dr. Feinstein, to sustain its burden of proof on the termination petition. Employer objects to Claimant's mischaracterization of Dr. Bennett's testimony, which did not explicitly or implicitly concede that Dr. Feinstein, as an orthopedist, was in a better position to opine on Claimant's physical injuries, but rather, acknowledged Dr. Feinstein's earlier report and stated his disagreement with it. R.R. at 147a, 159a.

As to Claimant's first issue, we discern no error in the WCJ's finding that Employer met its burden to terminate benefits, as supported by Dr. Bennett's report and testimony. We are not persuaded that Dr. Bennett's testimony on cross-examination in response to a hypothetical question, limited his opinion of Claimant's

---

[10] *See* Pa.R.A.P. 126(b) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. [] Non-precedential decisions . . . may be cited for their persuasive value.")

14

recovery from her physical injuries and her ability to return to work to "a neurological standpoint" only. Answers given during cross-examination do not destroy the effectiveness of a physician's previous opinion. Rather, such statements go to the weight and not the competency of the physician's opinion. *Corcoran v. Workers' Compensation Appeal Board (Capital Cities/Times Leader),* 725 A.2d 868, 872 (Pa. Cmwlth. 1999). Here, substantial evidence from Dr. Bennett's entire testimony supports the WCJ's finding that Claimant fully recovered from her accepted work injuries and was able to return to work. The "WCJ is the ultimate fact-finder, who must determine the credibility and weight of [witnesses'] testimony, in which the WCJ is free to accept or reject witness' testimony, in whole or in part, including that of medical witnesses." *Davis*, 753 A.2d at 909. "Although this Court can and should assess the competency and sufficiency of witness testimony, it may not review on appeal a WCJ's assessment of witness credibility." *Id.*

Claimant argues in her second issue that the WCJ erred as a matter of law when he misallocated the burden of proof on the termination petition to Claimant, rather than on Employer. Claimant argues that, as part of the termination petition, the WCJ erred by requiring Claimant to prove that she suffered from CRPS despite the fact that Dr. Feinstein opined earlier that Claimant could be suffering from CRPS. Claimant argues that Dr. Feinstein's earlier IME should be treated as Employer's admission that Claimant suffers from CRPS, and that CRPS is related to her accepted work injuries. Claimant relies on *Murphy v. Workers' Compensation Appeal Board (Mercy Catholic Medical Center)*, 721 A.2d 1167 (Pa. Cmwlth. 1998), to support this argument.

In *Murphy*, our Court was asked to evaluate whether substantial evidence supported the employer's termination petition, when the employer's

15

psychiatrist testified that he diagnosed the claimant with depressant disorder over one year before the termination petition was filed, and then recanted that diagnosis after viewing a surveillance video that showed the claimant engaging in activities that purportedly revealed no signs of the claimant's physical or psychological injuries. *Murphy*, 721 A.2d at 1170. The employer's psychiatrist recanted his earlier diagnosis without re-examining the claimant based solely on the video evidence. *Id.* After reviewing the evidence as a whole, this Court reversed and remanded, stating that "[t]his [C]ourt is not convinced that a medical expert can render a legally competent opinion on a claimant's medical condition after merely viewing selected activities shown in two days of surveillance videotape," thus, holding that the WCJ erred in finding substantial evidence supported the claimant's full recovery and granting the employer's termination petition. *Id.* at 1171. Here, Claimant argues that the WCJ erred in crediting Dr. Bennett's opinion of Claimant's full recovery when Dr. Feinstein's prior IME concluded that Claimant could be suffering from CRPS, urging our Court to view Dr. Bennett's opinion as a recantation of Dr. Feinstein's prior IME.

Employer responds that CRPS was never an accepted work injury, and, therefore, Employer was not required to show that Claimant had recovered from CRPS. Employer responds that Dr. Bennett's acknowledgement of, and disagreement with, Dr. Feinstein's earlier IME did not equate to Employer's acceptance of CRPS as a work-related injury. Employer argues that *Murphy* is distinguishable, when, here, Dr. Feinstein did not testify before the WCJ, where there was no video surveillance evidence present, and where Claimant's CRPS was not accepted as work-related through an amended NCP or as a finding by the WCJ during any proceedings. Employer argues that Dr. Bennett was not barred from

16

rendering a different opinion than Dr. Feinstein, when Dr. Bennett's opinion was based on his independent examination and review 11 months after Dr. Feinstein's report.

As to Claimant's second issue, we discern no error in the WCJ's allocation of the burden of proof on Employer's termination petition as it relates to Claimant's diagnosis of CRPS as a work-related injury. The WCJ allocated the burden on Employer in the termination petition, and on Claimant in the review and penalty petitions. C.R. at 53. We disagree with Claimant that our Court's holding in *Murphy* compels a different result, because, unlike the employer's expert in *Murphy*, Dr. Feinstein did not testify in these proceedings, Claimant's diagnosis of CRPS was never accepted as a work injury, and Dr. Bennett's opinion did not serve as a recantation of a prior opinion accepting CRPS as a work-related injury.

Claimant argues in her third issue that the WCJ erred as a matter of law when he credited Dr. Bennett's testimony where Dr. Bennett did not recognize that Claimant suffered from her accepted work injuries. Claimant argues that the following testimony on cross-examination demonstrates that Dr. Bennett failed to accept Claimant's accepted work injuries, and, thus, renders incompetent his opinion that Claimant fully recovered from them.

> Q: Do you agree that the records clearly show that [Claimant] suffered disabling injuries on February 18, 2017?
>
> A: No.
>
> Q: Not even in February of '17? She wasn't disabled then either?
>
> A: I didn't see her then. I'm not agreeing with anything. All I can agree with is what I saw, November 2nd, 2018.

17

Q: I ask what the records show.

A: The records—

Q: (Employer's counsel): They speak for themselves.

Q: (Claimant's counsel): But those records are part of what you formed your opinion on?

A: My records or my opinion is based upon my physical examination, review of records and review of diagnostic—

Q: Exactly, so I get to ask about the records you reviewed in forming your opinions.

A: I do not have any opinion of what her status was on January 1st, 2018. All I can say is what is my opinion. My opinion is based on my examination of November 2nd, 2018.

R.R. at 160a.

Claimant argues that this Court has held that an employer cannot meet its burden to terminate benefits where its own expert does not recognize that Claimant was disabled by the accepted work injuries in the first place. Claimant cites *GA & FC Wagman, Inc. v. Workers' Compensation Appeal Board (Aucker)*, 785 A.2d 1087 (Pa. Cmwlth. 2001), and *Elberson v. Workers' Compensation Appeal Board (Elwyn, Inc.)*, 936 A.2d 1195 (Pa. Cmwlth. 2007), in support. In *Wagman*, our Court held that the employer's medical expert's testimony could not support the finding that the claimant fully recovered from his work injuries, when the employer's medical expert testified that he did not believe that the injury accepted in the NCP ever occurred. *Wagman*, 785 A.2d at 1092. In *Elberson*, our Court held that the employer's medical expert's testimony could not support the finding that the claimant fully recovered from her work injuries when the employer's medical expert testified that he did not know what her work injuries were. *Elberson*, 936 A.2d at

18

1200. Claimant also argues that Dr. Bennett's testimony is insufficient to support a termination of benefits because Dr. Bennett failed to accept Dr. Feinstein's prior IME report that Claimant could be suffering from CRPS.

Employer responds that Dr. Bennett did not disagree that Claimant had suffered from the accepted work injuries, and that Claimant mischaracterized Dr. Bennett's testimony on this issue. Employer responds that the above-quoted testimony was elicited during cross-examination in response to a compound question, and is being taken out of context. Employer characterizes Dr. Bennett's testimony as simply his affirmation that he formed his opinion based on his November 2, 2018 IME, and not by relying on other medical reports. Employer argues that whether a medical expert's testimony is competent is a question of law, citing *Namani v. Workers' Compensation Appeal Board (A. Duie Pyle)*, 32 A.3d 850, 854 (Pa. Cmwlth. 2011). Employer further responds that even if an expert expresses skepticism as to the accepted work injury, when the expert's opinion, examined as a whole, is that the claimant recovered from the accepted work injuries, such opinion is competent and can support a termination, citing *O'Neill v. Workers' Compensation Appeal Board (News Corporation Ltd.)*, 29 A.3d 50 (Pa. Cmwlth. 2011). In *O'Neill*, our Court held that although the employer's medical expert testified that he was skeptical that the claimant suffered any particular injury when working for the employer, his testimony, when viewed as a whole, revealed that he "did not reject, or expressly refuse to recognize" the claimant's accepted work injury. *O'Neill*, 29 A.3d at 55. Therefore, the Court held that the medical expert's testimony was competent and legally sufficient to support termination. *Id.*

As to Claimant's third issue, we discern no error in the WCJ's finding that Employer met its burden to terminate benefits, as supported by Dr. Bennett's

19

report and testimony. We are not persuaded that Dr. Bennett's testimony on cross-examination in response to a compound question rendered his opinion incompetent. Answers given during cross-examination do not destroy the effectiveness of a physician's previous opinion. Rather, such statements go to the weight and not the competency of the physician's opinion. *Corcoran*, 725 A.2d at 872. Here, Dr. Bennett's entire testimony, including his affidavit of full recovery, in which he acknowledged Claimant's accepted work injuries and opined that she fully recovered from all of them, is competent to support termination. R.R. at 140a, 172a-74a. As previously discussed, *Davis* requires that the WCJ be the ultimate fact-finder who must determine the credibility and weight of witness testimony; this Court may not review a WCJ's assessment of witness credibility on appeal. *Davis*, 753 A.2d at 909. "Although this Court can and should assess the competency and sufficiency of witness testimony, it may not review on appeal a WCJ's assessment of witness credibility." *Id.* Further, based on our analysis of Claimant's second issue, we do not agree that the WCJ erred in crediting Dr. Bennett's testimony in support of termination, even though Dr. Bennett did not accept CRPS as a work-related injury, because CRPS was not an accepted injury.

Claimant argues in her fourth issue that the WCJ erred as a matter of law when he credited Dr. Bennett's opinion of Claimant's full recovery from her accepted injuries, when Dr. Bennett's opinion was equivocal. Claimant argues that Dr. Bennett's opinion was equivocal because he could not offer an opinion on Claimant's ability to return to work from a physical standpoint, only from a neurological standpoint. R.R. at 154a. Claimant also argues that Dr. Bennett's opinion was equivocal because although he did not agree with Dr. Feinstein's opinion regarding Claimant's diagnosis of CRPS, Dr. Bennett did not disagree with

Dr. Feinstein's observations that Claimant suffered from physical work injuries that limited her motion and caused pain. *Id.* at 159a. Claimant argues that to meet its burden for termination of benefits, an employer's medical evidence must be unequivocal, citing *Westmoreland County*, 942 A.2d at 217. Claimant further argues that unequivocal testimony is capable of being understood in only one way, and must leave no room for doubt, citing *Miller v. Workers' Compensation Appeal Board (Peoplease Corporation, Arch Insurance Company and Gallagher Bassett Services)*, 29 A.3d 869, 871 (Pa. Cmwlth. 2011).

Employer responds that Dr. Bennett's testimony, when viewed as a whole, expresses no doubt as to Claimant's recovery from the accepted work injuries, and that Claimant mischaracterized Dr. Bennett's testimony on this issue. Employer argues that Dr. Bennett clearly testified that Claimant recovered from all her physical, work-related injuries, and that he clearly testified that he disagreed with Dr. Feinstein's conclusions. Employer further argues that Dr. Bennett's testimony is not self-contradictory, but even if it was, the appearance of inconsistencies in a medical expert's testimony does not render that testimony equivocal, citing *Somerset Welding and Steel v. Workmen's Compensation Appeal Board (Lee)*, 650 A.2d 114, 119 (Pa. Cmwlth. 1994).

As to Claimant's fourth issue, we agree that Employer must present unequivocal testimony to support termination. *Westmoreland County*, 942 A.2d at 217. However, we discern no error in the WCJ's finding that Employer met its burden to terminate benefits, as supported by Dr. Bennett's report and testimony. We are not persuaded that the portions of Dr. Bennett's testimony pointed out by Claimant render his testimony equivocal. Here, when viewing Dr. Bennett's entire testimony, as we are required to do, we find no error in the WCJ's crediting of Dr.

21

Bennett's testimony in support of termination. R.R. at 140a, 172a-74a. Our Court has explained that "an employer's expert need not say 'magic words' in providing his opinion that claimant's work injury is fully resolved such that he can return to work." *Miller*, 29 A.3d at 871. Our Court has further explained that "[h]owever, medical testimony is equivocal if it is vague, leaves doubt, is less than positive or is based upon possibilities." *Id.* In *Miller*, we held that medical expert testimony was equivocal when the expert testified that "it was hard to say" whether the claimant sustained permanent damage from spinal surgery necessitated by a work injury, and when he opined that the claimant's pain was "nearly completely resolved for the most part." *Id.* at 872. Unlike the expert in *Miller*, here, we find no such vague or less than positive statements, or expressions of possibility in Dr. Bennett's testimony. Dr. Bennett's testimony when viewed as a whole is free from doubt, and provides substantial evidence to support termination of benefits.

In her fifth issue, Claimant argues that the WCJ erred in relying on Dr. Bennett's opinion that Claimant did not suffer from CRPS because she did not display certain objective criteria of the condition. Claimant argues that because Dr. Feinstein and Claimant's treating physician Dr. Zahl observed such objective criteria at different times, Dr. Bennett's opinion is incompetent because it is based on an assumption contrary to facts established in the record. Claimant correctly argues that a medical expert's opinion is incompetent if it is based on an assumption that is contrary to the established facts of record. *Taylor v. Workers' Compensation Appeal Board (Servistar Corp.)*, 883 A.2d 710, 713 (Pa. Cmwlth. 2005). Claimant argues that because Dr. Bennett assumed Claimant did not display objective symptoms of CRPS, his opinion that she does not suffer from CRPS is legally incompetent.

22

Employer responds that the WCJ's findings on Claimant's CRPS, which were made in connection with Claimant's review petition, were competent and supported by substantial evidence. Employer argues that Dr. Bennett's opinion was not contrary to established facts of record, but was based on his examination of Claimant where he observed no such objective symptoms of CRPS on November 2, 2018. Employer argues that although Dr. Feinstein or Dr. Zahl observed some objective signs of CRPS at different times, those observations are not established facts of record, and they do not render Dr. Bennett's opinion incompetent because he failed to agree with them.

As to Claimant's fifth issue, we observe again that although Employer has the burden of proof on a termination petition, on Claimant's review petition in which she seeks to modify the accepted injuries to include additional ones, the burden rests with Claimant to establish the existence of additional compensable injuries. *Cinram*, 975 A.2d at 582. If the connection between the alleged disability and the work accident is not obvious, a claimant must provide unequivocal medical testimony to establish that the additional compensable injuries were caused by the work accident. *Fotta*, 626 A.2d at 1146. As previously discussed, *Davis* requires that the WCJ be the ultimate fact-finder who must determine the credibility and weight of witness testimony; this Court may not review a WCJ's assessment of witness credibility on appeal. *Davis*, 753 A.2d at 909. Here, we discern no error in the WCJ's finding crediting Dr. Bennett's testimony over Dr. Zahl's testimony on the issue of whether Claimant suffered from CRPS, or in the WCJ's finding that Claimant failed to meet her burden to amend her work-related injuries through the review petition. We agree with Employer that Dr. Bennett's opinion that Claimant did not suffer from CRPS because she did not display objective signs is not

incompetent because he disagreed with Dr. Feinstein or Dr. Zahl, both of whom observed objective signs at other times. The WCJ found Dr. Bennett's testimony more credible than Dr. Zahl's testimony on this issue, which we may not disturb on appeal.

In her sixth issue, Claimant argues that the WCJ's serial errors that pervade his findings and conclusions undermine his adjudication that Employer met its burden to terminate Claimant's benefits, and, in the aggregate, constitute an error of law. Claimant argues that Employer's burden in a termination petition is considerable, because disability is presumed to continue until demonstrated otherwise, citing *Giant Eagle, Inc. v. Workmen's Compensation Appeal Board (Chambers)*, 635 A.2d 1123, 1127 (Pa. Cmwlth. 1993). Employer responds that based on the WCJ's findings as to Claimant's first four issues presented, which relate to the termination petition, Claimant cannot prevail by attempting to recap her arguments in this issue.

As to Claimant's sixth issue, based on our analysis of Claimant's first four issues presented, which relate to the termination petition, we discern no error in the WCJ's findings, or in his conclusion that Employer met its burden to terminate benefits. We have already determined that the WCJ did not err in finding Dr. Bennett's opinion and testimony credible as to Claimant's recovery from her accepted work injuries, that the WCJ did not err in assigning the burden of proof for the termination petition, and that the WCJ did not err in finding Dr. Bennett's testimony competent and unequivocal.

In her seventh issue, Claimant argues that if this Court reverses the WCJ for any of the errors asserted by Claimant, then it should also reverse the WCJ's finding that Employer met its burden of demonstrating a reasonable contest.

24

Claimant argues that if she is wholly or partly successful in litigating her claims, then reasonable costs must be awarded, which may include witness costs and stenographic costs, among others, citing Section 440 of the Act, and various cases interpreting the Act. Claimant further argues that, if successful here, she also should be awarded attorney's fees unless the Employer demonstrates that it presented a reasonable contest, again citing Section 440 of the Act. Claimant argues that Employer did not present a reasonable contest because it hid Dr. Feinstein's earlier IME report from Dr. Bennett, and engaged in opinion shopping until it found an evaluation that supported a termination of benefits. Employer responds by denying that it concealed Dr. Feinstein's report from Dr. Bennett, or otherwise shopped for another expert opinion. Employer responds that it did not hide any reports from Dr. Bennett, who testified that he did not review Dr. Feinstein's report before he evaluated Claimant, but that he reviewed Dr. Feinstein's report before he prepared his own, and that Dr. Feinstein's report "would have made and makes no difference in his opinion." C.R. at 89. Employer further responds that, under the plain language of Section 440 of the Act, Claimant may not recover costs or attorney's fees because Claimant did not prevail in whole or in part on her claims.

As to Claimant's seventh issue, we discern no error in the WCJ's finding that Claimant is not entitled to costs or attorney's fees under Section 440 of the Act, because she did not prevail in whole or in part on any of her claims. We also find no error in the WCJ's finding that Employer presented a reasonable contest.

For all the foregoing reasons, we affirm the Board's March 10, 2021 order, which affirmed the WCJ's January 31, 2020 decision and order granting

Employer's termination petition and denying Claimant's review and penalty petitions.

 

 

 

 

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lori A. Carpenter,                          :
                                            :
                          Petitioner        :
                                            :
                    v.                      :   No. 379 C.D. 2021
                                            :
Family Dollar Stores of                     :
Pennsylvania, LLC                           :
(Workers' Compensation                      :
Appeal Board),                              :
                                            :
                          Respondent        :

# **O R D E R**

AND NOW, this 14th day of January, 2022, the order of the Workers'
Compensation Appeal Board dated March 10, 2021, is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge