IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michelle Bradley,              :
                                            :
                    Petitioner    :
                                              :
            v.                  :  No. 948 C.D. 2023
                                            :  Submitted: July 5, 2024
American Food and Vending Corp.   :
(Workers' Compensation Appeal    :
Board),                         :
                                            :
                  Respondent  :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                         FILED: December 23, 2024


        Michelle Bradley (Claimant) petitions for review of the August 2, 2023, order of the Workers' Compensation Appeal Board (Board) affirming the decision of a workers' compensation judge (WCJ) that granted the petition to modify compensation benefits (Modification Petition) filed by American Food and Vending Corp. (Employer) under the Workers' Compensation Act (Act).[1] For the reasons that follow, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

Claimant sustained a work injury on December 26, 2017, that was recognized by Employer as head and neck injuries. WCJ's Opinion, 12/6/2017, Finding of Fact (F.F.) No. 1. A statement of wages listed an average weekly wage of $651.81 with a total disability rate of $497.50. *Id.* Thereafter, a Notification of Modification was issued by Employer, modifying Claimant's benefits to $211.87 per week as of January 2, 2019. *Id.*, F.F. No. 2. Pertinent here, Employer filed the Modification Petition on December 13, 2021, seeking to modify Claimant's benefits based on a Labor Market Survey and Earning Power Assessment. *Id.*, F.F. No. 3.

The matter was assigned to a WCJ. In support of its Modification Petition, Employer presented the deposition testimony of George Chovanes, M.D. Dr. Chovanes is board certified in neurosurgery and performed an independent medical examination (IME) of Claimant on January 18, 2021. At that time, Claimant's chief complaints were headache and posterior neck pain with left arm numbness and tingling. Dr. Chovanes took a history that Claimant slipped and fell on ice, striking her head and right shoulder. Dr. Chovanes also obtained a history of medical treatment that included a cervical fusion surgery at Claimant's C5-C6 and C6-C7 performed by Christoper Wagener, M.D. Claimant reported that the surgery was initially helpful, but the pain in her neck and arm returned along with almost daily headaches. Claimant indicated that, at times, her headaches were so severe that she could not get out of bed. While the throbbing pain in Claimant's left arm had mostly gone away, she still had numbness and tingling. Claimant stated that she was taking Ibuprofen. Claimant also related that she could not perform computer work because her head and arm would be in a fixed position. Claimant stated that she did not have these issues prior to the work injury. Claimant confirmed that she

2

was only able to drive short distances, but she was able to bathe and dress herself. WCJ's Opinion, F.F. No. 11.

Dr. Chovanes performed a physical examination of Claimant and reviewed Claimant's medical records of prior treatment. He testified that he diagnosed Claimant with an aggravation of previously asymptomatic cervical degenerative arthritis with chronic soft tissue inflammation and muscle spasm, and post-concussion syndrome with chronic headaches. WCJ's Opinion, F.F. No. 12. Dr. Chovanes found that while Claimant was in pain, she was "in reasonable functional shape." *Id.*, F.F. No. 13. He did not recommend additional surgery "because there [was] no evidence of cervical spine instability or spinal cord compression . . . ." *Id.* Dr. Chovanes opined that Claimant was at maximum medical improvement. He further indicated that because Claimant had no structural spine instability, there were no structural limitations to her return to work. Claimant's physical capabilities were based on her subjective pain and symptoms. *Id.*

Dr. Chovanes recommended a Functional Capacity Evaluation (FCE) that was completed on August 11, 2021. The FCE reflected that Claimant could function in a light physical demand level for eight hours per day. WCJ's Opinion, F.F. No. 13. The FCE also noted that Claimant demonstrated self-limiting behaviors and gave less than maximal effort. During various lifting activities, "Claimant gave minimal observable signs of exertion and lacked observable signs of exertion." *Id.*, F.F. No. 15. Dr. Chovanes also reviewed nine job analyses completed by John Dieckman, M.S. and testified that they were acceptable for Claimant with the caveat that she could lift to waist level only. *Id.*, F.F. No. 13.

On cross-examination, Dr. Chovanes agreed that Claimant had increased pain during the FCE. He also agreed that the activity in the jobs he

reviewed would be capable of causing an intermittent increase in Claimant's pain. Dr. Chovanes did not review Claimant's March 2022 Magnetic Resonance Imaging (MRI) or the reports of physicians who treated Claimant after her cervical fusion. Dr. Chovanes agreed that Dr. Wagener noted a non-union of the C5-C6 and C6-C7, meaning the surgery did not succeed in its objective. He stated that a non-union can produce pain. Dr. Chovanes did not wish to opine whether Claimant had a non-union as he did not see Claimant's films and indicated that such a conclusion "can be very subjective." WCJ's Opinion, F.F. No. 14. He testified that, based on his exam, he would not classify Claimant's spasms as severe. Furthermore, he noted that structured activity to keep Claimant's muscles moving was important to keep her range of motion adequate. Finally, Dr. Chovanes admitted that on some days it would be harder for Claimant to perform the jobs he reviewed than others. *Id.*

Employer also submitted the testimony of Mr. Dieckman. Mr. Dieckman testified that he had been involved in the field of vocational rehabilitation since 1983 and is a certified rehabilitation counselor and a certified disability management specialist. Mr. Dieckman performed an Earning Power Assessment of Claimant and interviewed her via Zoom on October 13, 2021. At that time, Claimant was 49 years old. She sat and stood during the interview because she was in pain. Claimant exhibited excellent communication skills and was able to provide a medical and vocational history. Claimant indicated that she had a valid driver's license and access to an automobile. She stated that she did not believe she was capable of employment and mentioned her difficulty with computer work or anything that requires her neck to be in a fixed position with her arms extended. Mr. Dieckman reviewed Dr. Chovanes' report, which is a type of report he would typically rely upon to perform an evaluation. WCJ's Opinion, F.F. No. 16.

4

Claimant related to Mr. Dieckman that she did not have a high school diploma or Graduate Equivalency Degree (GED). Claimant had worked for Employer for three years as an outside sales representative. The job entailed significant driving and face-to-face interactions with customers. Prior to working for Employer, Claimant worked for American Value Vending for six years in a similar capacity; thus, Claimant essentially worked in the same position for nine years. Prior to working for the vending companies, Claimant was a partner in a wholesale and retail distributor of seafood in Hazleton, Pennsylvania. Claimant acted as a manager in that company and did not perform sales. Claimant was also, at times, a stay-at-home mother to two children. WCJ's Opinion, F.F. No. 17. Claimant further stated that she was computer literate and used email and a software known as "Salesforce." *Id*. Finally, Claimant acknowledged receipt of a Notice of Ability to Return to Work form issued on August 25, 2021. *Id.*, F.F. No. 18.

Mr. Dieckman testified that he contacted Employer via email and was told that there were no jobs available for Claimant. Mr. Dieckman then conducted an Earning Power Assessment. WCJ's Opinion, F.F. No. 19. Regarding available jobs, Mr. Dieckman explained that the Act[2] requires him to look for jobs from a

---

[2] Section 306(b)(2) of the Act, 77 P.S. § 512(2), provides:

> "Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth. If the employe does not

**(Footnote continued on next page…)**

number of different sources. Mr. Dieckman used Career Link to identify a receptionist job in Wilkes-Barre, Pennsylvania. The job was available on December 21, 2021. He did not include the position to calculate Claimant's earning capacity because it did not list a salary. Mr. Dieckman also identified two jobs through employer websites. The first position was with Lowe's as an inside sales representative. The Lowe's job was available on October 21, 2021, and the job information was mailed to Claimant the same day. The pay for the Lowe's position was $18 to $26 per hour plus commission and an opportunity to earn a bonus depending on sales. The second job was with Vintage Tub and Bath (Vintage Tub) in Mountain Top, Pennsylvania, as a customer representative for prospective customers. The Vintage Tub position required frequent sitting, but the representative could take a break and walk around. The pay range for the Vintage Tub position was $42,000 to $47,000 per year. WCJ's Opinion, F.F. No. 20.

Mr. Dieckman also looked online at employment websites where he found seven additional jobs. They included:

- Commonwealth Equipment Corp. of Ashley, Pennsylvania, as a full-time sales representative. The position paid $17 to $21 per hour and was available on October 21, 2021. The job information was mailed to Claimant the same day.

---

live in this Commonwealth, then the usual employment area where the injury occurred shall apply. If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe. In order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by a vocational expert who is selected by the insurer and who meets the minimum qualifications established by the department through regulation. The vocational expert shall comply with the Code of Professional Ethics for Rehabilitation Counselors pertaining to the conduct of expert witnesses.

6

- Service Electric Cable TV in Wilkes-Barre, Pennsylvania, as a customer service representative working in an office. Some data entry was required. The job was sedentary, and the employee had the ability to get up and walk around for breaks. The position paid $17.65 per hour. The position was available on November 3, 2021, and the information was sent to Claimant on that date.

- A. Rifkin Co. in Wilkes-Barre, Pennsylvania, as an inside sales representative. The position paid $18 to $20 an hour and was available on November 3, 2021. The employment information was sent to Claimant on that date.

- First Keystone Community Bank in Berwick, Pennsylvania, as a customer representative/bank teller. The position paid $13.43 to $20.14 an hour and was available on November 3, 2021. The employment information was sent to Claimant on that date.

- Jan-Pro of Northeastern Pennsylvania as an inside sales representative, selling janitorial services. The job paid $18 per hour plus commission for an estimated $40,000 to $50,000 per year. The job was available on November 10, 2021, and was sent to Claimant the same day.

- State Farm in Hazle Township, Pennsylvania, as an inside sales representative. The job paid $14 to $16 per hour plus commission. The job was available on November 10, 2021, and was sent to Claimant the same day.

- J.T. Outten in Tamaqua, Pennsylvania, as a vehicle salesperson. The job was salary plus commission averaging $50,000 to $60,000 per year. The job was available on November 10, 2021, and was sent to Claimant the same day.

WCJ's Opinion, F.F. Nos. 21-22.

7

Mr. Dieckman testified that apart from the receptionist job, he visited all of the employers listed and met with them to obtain the job descriptions and salary. In most cases, he saw the jobs being performed. Mr. Dieckman also confirmed that the employee in those positions could take a break from sitting. WCJ's Opinion, F.F. No. 23.

Mr. Dieckman issued his "Earning Capacity Evaluation" report (Earning Power Assessment) on December 2, 2021.[3] The Earning Power Assessment notes that all positions identified were available for at least one week after the notice was sent to Claimant in order to give her time to apply. WCJ's Opinion, F.F. No. 23; Earning Power Assessment, Reproduced Record (R.R.) at 162a.

Mr. Dieckman also sent the job descriptions to Dr. Chovanes. Dr. Chovanes approved all nine job descriptions but noted on four of the descriptions that Claimant was not to lift above waist level. WCJ's Opinion, F.F. No. 23.

Mr. Dieckman averaged the salary of the nine positions and calculated Claimant's earning capacity to be $768.98 per week. He found that all the jobs were vocationally appropriate for Claimant based on Dr. Chovanes' restrictions. WCJ's Opinion, F.F. No. 23.

On cross-examination, Mr. Dieckman agreed that he did not have any treating doctor information for Claimant. He noted, however, that he gave Claimant's counsel an opportunity to provide such information, but he did not receive anything. WCJ's Opinion, F.F. No. 24; Deposition of John Dieckman, 5/25/2022, R.R. at 82a. Mr. Dieckman agreed that Claimant does not possess a high school diploma or GED and that it would impact her ability to find a job; however,

_____

[3] The Earning Power Assessment can be found at page 143a of the Reproduced Record (R.R.).

8

he explained that Claimant's sales experience was a "really valuable commodity" to employers. WCJ's Opinion, F.F. No. 24. Mr. Dieckman was surprised to find so many jobs that did not require a high school diploma. Furthermore, he agreed that Claimant had none of the preferred qualifications for the bank teller position and that she would have to apply for a license to sell automobiles. *Id.*

Claimant testified on her own behalf. She stated that as a salesperson for Employer, she drove to locations to acquire new clients and take care of existing clients. On December 26, 2017, she was at a client's facility to drop off promotional materials when she slipped and fell on a patch of ice. Claimant landed on her head, shoulder, and back. Her medical treatment included physical therapy, pain management, and cervical fusion surgery. She related that the surgery was not successful. She was currently treating with Dr. Mohamed Osman and receiving manipulations and injections. She was considering having a spinal cord stimulator implanted. Claimant was receiving massage therapy twice per week and indicated that it "t[ook] the edge off" for a short period. WCJ's Opinion, F.F. No. 6.

Claimant stated that her current symptoms included spasms up her shoulder blade, headaches, and a periodic spasm in her arm. Her shoulder spasms were constant. On a bad day, Claimant could not get out of bed and described her headaches as being "like a bad migraine." WCJ's Opinion, F.F. No. 6. On a good day, she could take a shower and possibly go to the grocery store. WCJ's Hearing Transcript, 5/17/2022, R.R. at 26a. She indicated that sitting too long, driving, walking, and being on a computer aggravate her pain. WCJ's Opinion, F.F. No. 6.

Addressing her ability to work, Claimant stated that looking at a computer screen with her arms outstretched to type increases her pain. She further testified that she did not believe she could work on the telephone soliciting

customers because she would be in one position for a prolonged period. Furthermore, stress worsens her pain. WCJ's Opinion, F.F. No. 7. Claimant noted that she does not have a high school diploma or GED. She has no experience in banking, handling cash, selling cars, or selling insurance. *Id.* She would have trouble getting in and out of automobiles to show them to customers. Claimant stated that bending and twisting increased her symptoms and that when she was in pain, she was unable to pay attention to conversations. She believed she could only lift 5 to 10 pounds and did not think she could work an 8-hour day, 5 days a week. Claimant noted that she experienced significant pain during her FCE. *Id.*

On cross-examination, Claimant reiterated that she does not feel capable of working and that she is receiving Social Security Disability benefits. Claimant agreed that she had not undergone a second surgery as recommended by her surgeon. Claimant discussed the jobs listed in Mr. Dieckman's report with her attorney. She related that she applied for eight or nine jobs, mostly online, as that was the only way to apply. Claimant received emails from some of the employers that the jobs were filled or that she was not the right fit. Some employers did not respond to her application. WCJ's Opinion, F.F. No. 8; WCJ's Hearing Transcript, 7/5/2022, R.R. at 290a. Some of the jobs Claimant applied for did require her to work on a computer. Claimant was not sure, however, if her doctors had restricted her from computer work. WCJ's Opinion, F.F. No. 8. Claimant admitted that her doctors had not restricted her from driving. Finally, Claimant did not apply for the car salesperson position because she was not licensed to sell cars. *Id.*

Claimant also presented the deposition testimony of Dr. Wagener, a board-certified orthopedic surgeon with a sub-specialty in spine surgery. At the time of his deposition on September 7, 2022, Dr. Wagener was practicing in Florida. He

was still licensed to practice medicine in Pennsylvania and had been for 15 years. Dr. Wagener moved to Florida in January of 2022. WCJ's Opinion, F.F. No. 25.

Dr. Wagener began treating Claimant on July 6, 2018, while he was still practicing in Pennsylvania. He diagnosed Claimant with cervical stenosis without myelopathy, aggravation of preexisting degenerative disc disease at C5-C6 and C6-C7, and herniated discs at both levels. Dr. Wagener recommended a fusion of both levels and performed surgery on September 13, 2018. Claimant initially obtained relief, "but not the relief she was seeking." WCJ's Opinion, F.F. No. 25.

Claimant continued to have neck pain and Dr. Wagener ordered a computed tomography scan (CT scan) on August 19, 2019. Dr. Wagener reviewed the CT scan and determined that Claimant did not have "a complete union" between C5-C6 and C6-C7. WCJ's Opinion, F.F. No. 25. He indicated that a complete union happens within 8 to 12 months of surgery. Dr. Wagener explained that a non-union causes micro-movement that pinches nerves and causes pain and dysfunction. He recommended surgical correction of the non-union which could involve the placement of screws to add stability or removing the plate and grafts and using different materials that might aid in the healing process. Dr. Wagener explained that some patients do well with a non-union, but that Claimant suffered from a painful non-union. *Id.*

Dr. Wagener testified that his last visit with Claimant was on December 3, 2019. At that time, he continued to recommend surgery with screw placement as well as cessation of smoking and treatment for non-surgical pain management. Dr. Wagener related that if Claimant did not have the surgery, she was at maximum medical improvement. WCJ's Opinion, F.F. No. 26.

11

Dr. Wagener looked at the jobs provided to Dr. Chovanes and did not think that Claimant could perform them. Dr. Wagener believed that Claimant would require frequent breaks to change position—15 minutes for every hour. Dr. Wagener reviewed the FCE, and it did not change his opinion. WCJ's Opinion, F.F. No. 26.

On cross-examination, Dr. Wagener agreed that he had not seen Claimant since December 3, 2019, despite practicing in Pennsylvania in 2020 and 2021. He did not recall reviewing the job analyses that were sent to Dr. Chovanes. WCJ's Opinion, F.F. No. 27. Further, Dr. Wagener noted that because he believed Claimant required further surgery, he would not return her to any labor-intensive job. Deposition of Christopher Wagener, M.D., 9/7/2022, R.R. at 359a-60a. He stated that Claimant could perform part-time sedentary work with a 15-minute break every hour. WCJ's Opinion, F.F. No. 27.

Finally, Claimant presented the deposition testimony of Dana Marmo, a licensed professional counselor, certified rehabilitation counselor, and certified vocational evaluator. Ms. Marmo had been working in the field of vocational rehabilitation and counseling since 2017. She testified that "an employer's tolerance of an[] employee being off task is 5-10% of the day and absenteeism tolerance is once per month." WCJ's Opinion, F.F. No. 29. She stated that she had reviewed Dr. Wagener's recommendation that Claimant needed part-time work with a 15-minute break every hour. Based on her statements concerning an employer's tolerance for "off task" behavior and her review of Mr. Dieckman's job analyses, she opined that Claimant was not capable of sustained employment. Deposition of Dana Marmo, 9/22/2022, R.R. at 427a-28a.

On cross-examination, Ms. Marmo admitted that she reviewed Dr. Wagener's narrative report, the FCE, and the nine job analyses. She did not review

12

Mr. Dieckman's Earning Power Assessment. She testified that she was only retained to provide an opinion on standard workplace tolerances for absenteeism and off task behavior. Finally, she did not have Dr. Chovanes' report, did not meet with Claimant, and did not contact any employers listed in Mr. Dieckman's nine job analyses. WCJ's Opinion, F.F. No. 30.

The WCJ found the testimony of Dr. Chovanes to be credible on all issues raised in the dispute. Per the WCJ, Dr. Chovanes credibly explained that while Claimant has pain, she is in reasonable functional shape. That opinion was supported by Dr. Chovanes' examination that Claimant had good strength in all muscle groups and no indication of spinal cord compression. Dr. Chovanes also credibly explained that Claimant had no structural instability. In addition, the FCE supported Dr. Chovanes' opinion about Claimant's ability to work, as it showed her minimum functional capacities. Of note, despite the issues with Claimant's submaximal and self-limiting behavior at the FCE, Dr. Chovanes kept his restrictions within the parameters of the FCE. Dr. Chovanes testified that Claimant's spasms were not severe and that work would benefit Claimant physically and mentally. WCJ's Opinion, F.F. No. 34.

The WCJ also found the testimony and opinions of Mr. Dieckman to be credible. The WCJ noted that many of Mr. Dieckman's opinions about the jobs in his Earning Power Assessment were uncontradicted by vocational testimony. In this regard, Claimant's vocational expert did not have Mr. Dieckman's Earning Power Assessment, and she admitted she was not hired to critique it. Furthermore, the WCJ credited Mr. Dieckman's opinions because he relied on the credible opinions of Dr. Chovanes. In addition, the WCJ noted that Mr. Dieckman met with employers and

inquired about an employee standing and moving around for comfort breaks. WCJ's Opinion, F.F. No. 35.

The WCJ did not find Claimant credible regarding her ability to work because "the FCE showed self-limiting behaviors and less than maximum effort." WCJ's Opinion, F.F. No. 33. Further, the WCJ found Claimant's testimony to be not credible based on the credible testimony of Dr. Chovanes. *Id.*

The WCJ found the testimony and opinions of Dr. Wagener about Claimant's ability to work to be not credible. The WCJ rejected Dr. Wagener's opinion because he had not seen Claimant for over a year before Dr. Chovanes' IME and the completion of the FCE and Earning Power Assessment. In addition, the WCJ noted that Claimant could have returned to Dr. Wagener in the calendar years of 2020 and 2021 as he was still located in Pennsylvania, but she did not. *Id.*

Finally, the WCJ found that Ms. Marmo's opinions and testimony were not credible because they were not based on the restrictions set by Dr. Chovanes or the FCE. Furthermore, she did not review the Earning Power Assessment or meet with Claimant. WCJ's Opinion, F.F. No. 37.

The WCJ held that Employer sustained its burden of proving that Claimant's wage loss benefits should be modified based on an earning power assessment. As requested by Claimant, all nine jobs were sent to her through her counsel, with all necessary information to apply online. The jobs remained open for at least a week, which is sufficient time to apply online. Furthermore, the nine jobs were sent three at a time, at least a week apart, meaning that Claimant would have to apply for three jobs online in one week. The nine jobs met Dr. Chovanes' restrictions and were vocationally suitable based on Mr. Dieckman's credible testimony. WCJ's Conclusions of Law (C.L.) No. 2.

14

The WCJ also determined that the car sales position was not legally available to Claimant and indicated it was not used to determine Claimant's earning capacity. Ultimately, the WCJ calculated Claimant's earning capacity to be $676.23. Because Claimant's earning capacity exceeded her average weekly wage of $651.81, the WCJ suspended Claimant's benefits. WCJ's C.L. Nos. 3-4.

Claimant appealed the WCJ's decision, and the Board affirmed. Claimant now appeals to this Court.[4]

At the outset, as we review the issues presented by Claimant, we are mindful that in workers' compensation cases, "the WCJ is the ultimate fact[]finder who must determine credibility and evidentiary weight. In this role, the WCJ freely evaluates the evidence offered and can accept or reject any witness'[s] testimony, in whole or in part, including that of medical witnesses." *Davis v. Workers' Compensation Appeal Board (City of Philadelphia)*, 753 A.2d 905, 909 (Pa. Cmwlth. 2000) (*Davis*). "While this Court can and should consider the competency and sufficiency of evidence presented before a WCJ, the WCJ's assessment of witness credibility is not subject to our review on appeal." *Id.* Furthermore, in a substantial evidence analysis where, as here, both parties presented evidence, "it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ, rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding." *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa.

---

[4] This Court's review is limited to determining whether the WCJ's findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *DiLaqua v. City of Philadelphia Fire Department (Workers' Compensation Appeal Board)*, 268 A.3d 1, 4 n.5 (Pa. Cmwlth. 2021). "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003).

Cmwlth. 1998). This Court's authority is limited to reviewing the entire record to see if it contains evidence that a reasonable person might find sufficient to support the WCJ's findings. *Department of Corrections-SCI Chester v. Faison (Workers' Compensation Appeal Board)*, 266 A.3d 714, 736 (Pa. Cmwlth. 2021) (*Faison*). If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence. *Id.*

This Court "may overturn a credibility determination only if it is arbitrary and capricious, so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *West Penn Allegheny Health System, Inc. v. Workers' Compensation Appeal Board (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021) (citation omitted) (*Cochenour*). Capricious disregard of evidence "is a deliberate and baseless disregard of apparently trustworthy evidence." *Faison*, 266 A.3d at 736 (quoting *Williams v. Workers' Compensation Appeal Board (USX Corp.-Fairless Works)*, 862 A.2d 137, 144 (Pa. Cmwlth. 2004)). Finally, we must review the evidence in the light most favorable to the prevailing party. *Cochenour*, 251 A.3d at 475.

As to the Modification Petition, Section 413 of the Act, 77 P.S. §772, authorizes a WCJ to modify or suspend a claimant's benefits where a claimant has some earning power. Disability compensation is based upon the difference between a claimant's pre-injury wages and her post-injury earning power. Section 306(b)(2) of the Act establishes how a claimant's "earning power" is to be determined. Disability benefits may be modified where the employer establishes the claimant's earning power by offering her a job or by locating appropriate positions through "expert opinion evidence." *Fedchem, LLC v. Workers' Compensation Appeal Board (Wescoe)*, 221 A.3d 348, 355 (Pa. Cmwlth. 2019). The employer bears the burden

of proving the claimant's earning power. *Id.* A claimant may refute the employer's evidence by showing that the employer's labor market survey was erroneous or that "the claimant's actual experience with the employers identified in the employer's labor market surveys" shows that the positions were not available. *Id.* (quoting *Phoenixville Hospital v. Workers' Compensation Appeal Board (Shoap)*, 81 A.3d 830, 844 (Pa. 2013)). A claimant must have a reasonable opportunity to respond to the employer's vocational evidence and be able "to present evidence regarding her or his experience with applying for the jobs identified by the employer's expert witness." *Id.* at 356 (quoting *Phoenixville*, 81 A.3d at 844).

First, Claimant argues that even if Dr. Chovanes' testimony is accepted in its entirety, Employer still did not sustain its burden of proving that Claimant's wage loss benefits should be modified. Claimant highlights that Dr. Chovanes declined to offer an opinion as to whether Claimant's cervical fusion resulted in a non-union. Claimant opines that the effect of the non-union is critical to Claimant's fitness for any activity, and Dr. Chovanes' "inability to offer an opinion in that regard makes his testimony incompetent to sustain [Employer's] burden." Claimant's Brief at 23. Claimant also highlights that Dr. Chovanes found Claimant credible when she described her limited physical capabilities, yet he stated that she was in functional shape. Furthermore, he admitted that the available jobs would be capable of increasing her pain. Claimant also takes issue with Dr. Chovanes' characterization of her spasms as not severe. While the spasms may not have been severe when he examined Claimant, Dr. Chovanes nevertheless admitted that the spasms could be more severe at times and less severe at others.

Claimant also challenges the WCJ's rejection of Dr. Wagener's testimony on the basis that he had not seen Claimant for over a year before Dr.

17

Chovanes' IME and the completion of the FCE and Mr. Dieckman's Earning Power Assessment. Claimant cites records that reflect her last visit with Dr. Wagener was on July 28, 2020, only six months prior to Dr. Chovanes' examination, not one year.[5]

Finally, Claimant asserts that the WCJ improperly rejected Ms. Marmo's testimony on the basis that she did not base her opinions on the restrictions set by Dr. Chovanes or the FCE. Claimant contends that these documents were not critical to Ms. Marmo's opinion regarding general tolerances for absenteeism and time off in the workplace. Furthermore, Claimant notes, Ms. Marmo's testimony regarding those tolerances was uncontroverted.

Employer counters that Claimant's arguments are nothing more than attacks on the credibility determinations of the WCJ. Because the WCJ accepted Employer's medical evidence as to Claimant's ability to work as well as its vocational evidence as to the availability of work providing an earning power, there was substantial evidence upon which the WCJ could base her findings; thus, the WCJ correctly held that Employer met its burden of proof. We agree.

Having reviewed the record in its entirety, we cannot say that Claimant has shown that the WCJ misapprehended material facts or ignored competent evidence. Fundamentally, Claimant is taking potshots at Employer's witnesses in an attempt to undermine their testimony. She is, in essence, asking this Court to accept her version of the facts and evidence. This is not permitted. *See Davis*. The record reflects that the WCJ carefully reviewed and weighed the evidence and concisely set forth the reasons for her credibility determinations. Claimant's disagreement with these reasons does not provide a sufficient basis to overturn the

---

[5] Claimant does not elaborate on why this lesser period of time is significant. Regardless, Claimant's July 28, 2020, office visit with Dr. Wagener was still over a year before the FCE and Mr. Dieckman's Earning Power Assessment were completed.

18

WCJ's credibility determinations. Because the record contains evidence supporting the WCJ's findings, we conclude that Claimant's arguments are without merit.

Next, Claimant argues that Employer failed to sustain its burden of proving that the available positions remained open for a sufficient time to allow Claimant to apply. Claimant maintains that the only evidence of continued job availability was a reference in Mr. Dieckman's Earning Power Assessment that the jobs were available for at least one week after the notices were sent to Claimant. Claimant argues that none of the return receipt cards accompanying the notices sent by Mr. Dieckman are legible. She further alludes to the slow mail delivery during the COVID-19 Pandemic.

At the outset, it appears that Claimant's arguments concerning the return receipt cards and slow mail delivery were not raised before the WCJ and Board and were therefore waived. *See Curtis v. Workers' Compensation Appeal Board (Berley Electric Company)*, 730 A.2d 528 (Pa. Cmwlth. 1999) (legal issues and facts not presented to the WCJ or raised in an appeal to the Board must be deemed waived and cannot be raised on appeal).[6] Regardless, the WCJ's finding was based on Mr. Dieckman's Earning Power Assessment which states, "All positions identified in this earning report have been available for at least one week after notice so as to allow [Claimant] sufficient time for her application. Specific dates are available upon request." Earning Power Assessment, R.R. at 162a. Mr. Dieckman was found credible by the WCJ; thus, it is apparent that this argument amounts to nothing more than a challenge to the WCJ's credibility determination. As noted above, credibility determinations are not subject to this Court's review.

---

[6] Further, we agree with the Board's characterization of Claimant's testimony in this regard as "vague." Claimant did not present any specific testimony or evidence as to when she applied for these positions or, for that matter, the prospective employers' responses.

In the same vein, Claimant argues that Employer failed to produce evidence of a change in Claimant's physical condition - a condition precedent to modifying Claimant's benefits.[7]  We reject this argument as well.  As the Board observed, the WCJ accepted the testimony of Dr. Chovanes, who opined that Claimant was able to work and who agreed that the jobs identified by Mr. Dieckman were appropriate.  This credible testimony was sufficient to show that Claimant's symptoms had improved to the point where she was capable of gainful employment.  We cannot and will not disturb this credibility determination on appeal.  *Davis*.[8]

Finally, Claimant contends that the WCJ erred in overruling her counsel's hearsay objection to the introduction of the FCE.  Claimant asserts that there was no opportunity to cross-examine the evaluator regarding methodology or his qualifications.

Employer responds that the admission of evidence is committed to the sound discretion of the WCJ.  *Atkins v. Workers' Compensation Appeal Board (Stapley in Germantown)*, 735 A.2d 196, 199 (Pa. Cmwlth. 1999).  Here, the WCJ

---

[7] We presume Claimant is arguing that Employer failed to prove that Claimant's symptoms had improved to the point where she was capable of gainful employment.  *See Simmons v. Workers' Compensation Appeal Board (Powertrack International)*, 96 A.3d 1143, 1149 (Pa. Cmwlth. 2014) (where modification based upon earning capacity is sought, it is not necessary to demonstrate that a claimant's diagnoses have changed since the last proceeding, but only that her symptoms have improved to the point where she is capable of gainful employment).

[8] We also reject Claimant's assertion that the WCJ failed to take Claimant's pain into account when she concluded that Claimant was capable of employment.  Dr. Chovanes credibly testified that Claimant was indeed suffering pain and numbness; however, based on his physical examination of Claimant, he also testified that Claimant did not have structural spine instability and, therefore, there were no structural limitations to her work.  Furthermore, he approved the nine job analyses completed by Mr. Dieckman.  Claimant asks this Court to ignore this testimony, highlighting Dr. Wagener's testimony that Claimant was only capable of limited part-time sedentary work with a 15-minute break every hour.  Yet again, we note that Dr. Wagener's testimony was not found to be credible by the WCJ.  We need not address this argument further for the reasons set forth above.

did not abuse her discretion in overruling the objection to the admission of the FCE as Dr. Chovanes testified that the FCE was the type of evaluation he would rely upon in helping him render his opinions.[9]

We perceive no error. The testimony of an expert, although based upon data not admissible in evidence, is legally competent if the data is of the type reasonably relied on by an expert in the particular field in forming an opinion on the subject. *Acme Markets, Inc. v. Workmen's Compensation Appeal Board (Pilvalis)*, 597 A.2d 294, 298 n.3 (Pa. Cmwlth. 1991). Because Dr. Chovanes testified that the FCE is the type of evaluation he would rely upon in rendering his opinions, the WCJ did not err in overruling Claimant's hearsay objection to the FCE.

Accordingly, the Board's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

---

[9] Dr. Chovanes testified as follows:

> Q. Okay. And is a functional capacities evaluation the type of evaluation that you would normally review and rely upon in reaching your own opinions and conclusions regarding a patient's abilities?
>
> A. Absolutely.
>
> Q. Okay. And did you do so in this case?
>
> A. Yes.

Deposition of George I. Chovanes, M.D., 6/27/2022, R.R. at 223a-24a.

21

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michelle Bradley,                        :
                                           :
                Petitioner    :
                                             :
             v.                  :   No. 948 C.D. 2023
                                             :
American Food and Vending Corp.   :
(Workers' Compensation Appeal    :
Board),                                   :
                                             :
            Respondent  :

# **O R D E R**

AND NOW, this 23rd day of December, 2024, the order of the Workers' Compensation Appeal Board dated August 2, 2023, is AFFIRMED.

_____

MICHAEL H. WOJCIK, Judge